D. S. PRINTUP *et al.*, plaintiffs in error, *vs.* WILLIAM A. FORT, defendant in error.

1. F., having the control of certain convicts, hired them for a certain fixed price per day to B., who represented himself as a mere agent for C., and promised that himself and his brother, whom he represented as agent for C., would see to it that a correct account of the days should be kept, and the brother afterwards became a partner with F. in the hiring of the convicts from the State, representing that he was the agent of C. in the work at which the hands were to be engaged at a fixed salary, one-half of which he agreed should go to F. F. filed a bill against B. and his brother, and others, alleging that in fact B. and his brother were not agents of C., but were acting for a partnership of which they were themselves, with the other defendants, were members, charging also that a correct account of the days the convicts had worked had not been kept, and that the brother of B., in fact, got no salary, but was a partner, and praying that the whole contract be treated as null, in consequence of the fraud, and that the partnership be compelled to account to him for the profits made by the labor of the convicts: *Held*, that, as under the charges under the bill, B.'s brother was a partner of F., and also of the other firm, equity had jurisdiction to compel a discovery of the true number of days the hands had worked, and an account therefor according to the contract, as well as to compel an account to F. from the firm for the one-half of the salary of B.'s brother represented himself as receiving.

2. *Held further*, That as it did not appear that F. had been defrauded in the contract of hiring by the false statements of B. or his brother, or had been induced by such false representations, to hire the convicts for less than he would otherwise have taken for them, he had no right to have the contract treated as null, and be let in to share the profits which the partnership of B. and the others had made by working the hands.

Equity. Partnership. Before Judge KIRBY. Floyd Superior Court. July Term, 1869.

On the 4th of May, 1868, Daniel S. Printup, as agent for E. G. Barney, superintendent for contractors of the Selma, Rome and Dalton Railroad, and Fort entered into a written "memorandum of agreement," as follows: Fort was to furnish one hundred negro men, convicts in the Georgia Penitentiary, sound and able-bodied, capable of efficient labor at grading railroads, or other hard labor at which they might be put on said railroad, near Cave Spring, Floyd county,

Georgia, there to be turned over to Joseph J. Printup, super-intendent of grading at that point, and to furnish necessary guards for them.   Barney was to pay Fort forty-eight cents for each day's labor by each hand, furnish all rations and other food for the hands and for the guards, (as many as twelve, if necessary,) to furnish necessary overseers and fore-men to direct the work.   All other things necessary for the safe keeping, health, and clothing of these convicts, were to be fur-nished by Fort; he was to pay for the transportation to said point.   He was to receive pay for first month's, or twenty-six days', work, ten days after the end of the month, and the subse-quent settlements were to be every three months after the first month.   This contract was to last twelve months from the delivery of said convicts, and to cover one hundred convicts or more.

On the 15th of June, 1868, by written endorsement on said memorandum, Joseph J. Printup agreed to become equally bound and interested with Fort in said contract, and on the 15th of June, 1868, Fort and Joseph J. Printup signed another agreement, by which Joseph J. Printup was recognized as equally bound and interested as aforesaid, and by and in all other contracts made in reference to said con-victs made with the Governor of Georgia, or for other con-victs who might be thereafter received or contracted for, and Fort was to make efforts at once to. get as many more convicts as he could on the same or better terms; Joseph J. Printup was to take the full management of all the convicts and em-ployees with them, at once, and to pay half of all expenses incurred or to be incurred.

In June, 1869, Fort filed a bill against Daniel S. Printup, Joseph J. Printup and William Printup, of Georgia, and said Barney and A. D. Breed, non-residents of this State, in which the said agreements of May and June, 1868, were made exhibits A and B, respectively, and containing the fol-lowing charges and prayers:

Some time in 1868, Daniel S. Printup, then a director of said railroad, and his said brother, Joseph J., contracted with Barney, the general agent of Breed, or with Breed, for the

grading of said railroad from Cave Spring to Rome, Georgia, (grading included surfacing and ditching,) at a certain rate, which paid, or was to pay, immense profits. The terms of this contract, and whether made with one or both of the Printups, Fort does not know, because they studiously concealed its existence from him. On the 4th of May, 1868, Daniel S., pretending to be Barney's agent, made the agreement of that date aforesaid, and agreed to give Fort the benefit of another contract, with one Smith, in relation to convicts from Alabama, which, among other things, provided pay at the rate of $50 00 per month for each hand, and all stockades and quarters to be erected at Barney's expense, and Barney was to feed the guards. Daniel S. insisting on making a memorandum of it, exhibit A was made to last only till the terms of the Alabama contract could be ascertained, and then the full contract was to be written and signed. This was never done.

Joseph J. Printup made the contract of 15th of June, 1868, for the benefit of himself, Daniel S., and another brother, William Printup. Both of these contracts were void, because fraudulently made. The fraud consisted in this: As to the first, Daniel S. pretended he was acting as agent for Barney, and Joseph J. was only superintendent of grading, at a salary of $3,000 00, whereas Daniel S. Printup was acting for himself and Joseph J., he or Joseph J., or both, being contractors for the work which said negroes were to do, and they studiously concealed that fact from Fort. The same concealment and fraud existed as to the contract of June, 1868, in which all three of the Printups were interested. Joseph J. induced Fort to enter into this last contract by offering to give him half of said salary, and promising to attend to all the business, keep the books, and relieve Fort from all trouble in the premises, and by inducing the keeper of the penitentiary to represent to Fort that it was dangerous for him to be with said convicts. As another inducement thereto, Daniel S. plied Fort with glowing pictures of the wealth to be made in such work on said railroad. Supposing he was contracting with parties who had no interest in de-

Printup *vs.* Fort.

frauding him, he entered into said obligations but has lately discovered that they were contractors, and were themselves to keep the time and expenses of the hands which they hired from him, and that Joseph J. was not working for any salary whatever, nor has Joseph J. paid Fort any part of said salary, nor given his personal attention to said hands since August, 1868.

On the 12th of May, 1868, Daniel S. and Joseph J. took charge of said one hundred hands, and of another hundred, which Fort procured the Governor to hire to him and Joseph J., (the Governor having previously promised this second lot to Fort individually;) they detailed some six of them for cooks, and some dozen of them for blacksmiths, wagon makers, boot and shoe makers, and made them work at such occupation, in cooking for said hands, mending the wagons and tools of said Printups, and the shoes of their employers. These mechanics were worth $5 00 per day, and yet their time was not counted in the accounts with Fort. This continued from the 12th of May to the 25th of October, 1868. The officers and agents of said road deny Fort access to the books, and he cannot give figures, but supposes that by these fraudulent contrivances said Printups made, say $40,000 00 profits.

He contended that said contracts were void by reason of said frauds, and that, therefore, all of said profits belonged equitably to himself. He charged that the Printups were unable to respond to so large a demand, and that the other defendants resided out of the State.

He prayed for discovery from all of said five defendants, touching all of said charges, the operations with said hands, the gross earnings, and the net profits, etc., prayed that Breed and Barney be enjoined from paying the Printups anything on said accounts, and that the Printups be enjoined from transferring them, and that he should have a decree against the Printups for all profits made by them in the premises.

The bill was sanctioned. Defendants demurred to it, stating reasons, all resolvable into these two: There is no equity in the bill, and it is multifarious, or if Fort was enti-

tled to anything, his remedy at law was complete against the several parties who defrauded him.   The demurrer was overruled, and that is assigned as error.

ALEXANDER & WRIGHT, R. F. FOUCHE, WILLIAM H. DABNEY, for plaintiffs in error.

UNDERWOOD & ROWELL, for defendant in error.

McCAY, J.

The bill charges, and the demurrer admits, that in fact Joseph Printup was one of a partnership, composed of himself and the other defendants.   The bill also charges that Joseph Printup was a partner with complainant, and as the case is stated in the bill, Fort and Joseph Printup composing one firm, have a controversy with Joseph Printup and the other defendants, composing together another firm.   This controversy is made up of two items:   First, it is charged that Joseph Printup, and his partners in the work, owe Fort and Joseph Printup, for one thousand days' work.   Second, it is charged that Joseph Printup, representing himself as the agent of Breed, agreed with Fort to give him half his salary as agent, and it is charged that in making this statement he was acting in the interests of the firm.

We think that Fort has not a complete remedy at law by which to get his individual rights against the partnership as they exist with reference to these two claims.   The bill, for this reason, has equity in it, and it was proper that a *general demurrer* to the bill for want of equity should have been overruled.

But we do not think the charges in the bill are sufficient to sustain and justify the prayer of the bill to set aside the original contract as a fraud, and to let Fort in to share the profits of the convicts in the work.   As we understand the bill, it contains no statements amounting to a charge of fraud in Printup, in the contract.   How, when, in what way, was Fort defrauded in the *contract?*   He acted, it is true, under a mistake.   He was misled, deceived by Daniel Printup.

But was he so deceived as to induce him to make a less favorable contract for himself than he otherwise would have made?   Did he agree to let Printup, the agent, have the convicts at a cent less per day than he would have been willing to hire them for to Printup, the partner?   He does not even so say, nor does he state a fact from which it is to be inferred. His forty-eight cents per day seems, as far as the bill shows, as much as Fort asked for the convicts.   The contract, so far as we can see, is not different from what it would have been had Daniel Printup appeared and contracted as a partner. If there was deceit and falsehood, it did Fort no harm in the contract.   The real complaint of Fort is, that the contract has not been kept and performed; that Printup has not done as he promised, kept a correct account of the days the convicts were at work.   For this *breach* of the contract Fort has a right to redress, and as we have said, he may, under the charges he makes, ask a Court of Equity to give him relief, not to set aside the contract, as to which he was not misled, but as to its enforcement, in which he has been deceived.   The agreement was, that Printup should keep a correct account, and the bill gives the belief of Fort that Printup was only agent, as the reason why Fort trusted this matter to him.   If Printup made a promise he has not performed, and misled Fort, so as to induce him to trust to that promise, Fort has a right to recover all the loss he has suffered by reason of the promises and failures of Printup.   If by that deception, it has resulted that less days have been paid for than was right, for that Fort has his redress.   He is entitled to the price agreed upon for every day they were at work.

2.  But to permit him to repudiate the contract on his part, and become a sharer in the enterprise, is, in our judgment, contrary to the agreement.   Fort agreed upon forty-eight cents per day.   It does not appear but that he has got the pay for the time, except as to the one thousand days, just as they agreed, to-wit: at forty-eight cents per day.   In our judgment this prayer asks entirely too much, and had the bill no other equity, we would have felt constrained to hold

it demurrable.   But as we have said, it is a good bill for the purposes we have mentioned, and in a demurrer to the whole bill for want of equity, if there be any equity, the demurrer is not good.

Judgment affirmed.