## No. 10,190.

BRIDGET CURLEY, INDIVIDUALLY AND AS TUTRIX, VS. ILLINOIS CENTRAL RAILROAD COMPANY.

A railroad company, running and operating its road through the streets of a populous city, is bound to observe extraordinary precautions for the safety of the public, particularly at street crossings.

Where these precautions are omitted by the company, and a party is injured and there is no concurrent contributory negligence on his part, the company will be held liable.

APPEAL from the Civil District Court for the Parish of Orleans. Voorhies, J.

### B. R. Forman for Plaintiff and Appellee :

1. A railway company is to be held to the exercise of a very high degree of care in operating its road through the populous streets of a city, and will not be permitted to omit with impunity any reasonable duty that may tend to the safety of the public, which has an equal right with the railroad company to the full use of the thoroughfares.  C. P. Q. R. R. vs. Stumps, 69 Ills. 409.
2. The Illinois Central Railroad Company, acting as the successor of the New Orleans, Jackson and Great Northern Railroad Company, is bound, while running trains over their track on St. Joseph street :
   (a) to keep the engine in front of the train while in motion ;
   (b) to place watchman with a red lantern or signal flag at each street crossing while the train is in motion, and to have similar lights attached to each side of the train when run during the night.  Ordinance No. 1031, Administration Series, A. D. 1871, and Ordinance No. 2340.
3. The surviving children or widow may recover the damages sustained by them by the death of the deceased father and husband, as well as the damages which he himself could have recovered.  C. C. 2315, as amended by Act No. 71 of 1884, p. 94.

### Girault Farrar for Defendant and Appellant :

1. When one approaches a point upon the highway, where a railway track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any description, he must use what the law says is ordinary care under the circumstances.  Beach on Contributory Negligence, p. 191, and authorities; Rorer on Railroads, Vol. II, p. 1031, and authorities cited ; 95 U. S. 161, Improvement Company vs. Stead ; 33 Ann. 154, Childs vs, Railroad; 23 Ann. 264.
2. The law prescribes the quantum of care with great exactness.  In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track.  Beach on Contributory Negligence, p. 192, and authorities cited ; Railroad Company vs. Houston, 95 U. S. 697; Railroad Company vs. Schofield, 114 U. S. 615; Stubley vs. London and Northwestern Railway Company, Court of Exchequer Reports, Vol I, p. 12.
3. He must even come to a halt for this purpose, unless it is plainly evident from his senses of sight and hearing that there is no danger.  Beach on Contributory Negligence, pp. 192, 193, 195, and authorities; 10 Allen, 532; 29 N. Y. 315 ; 73 Penn. St. 504; Reynolds vs. Hudson River R. R., 58 N. Y. 248.
4. Failure on the part of the railway company to do its duty will not excuse any one from using the senses of sight and hearing upon approaching a railway crossing.  Beach on Contributory Negligence, p. 195, sec. 64; Hinckley vs. Cape Cod R. R., 120 Mass. 257 ; Bellefontaine, etc., R. R. Co. vs. Hunter, 33 Ind. 335; 27 Barb. 534; McGrath vs. N. Y. Central and Hudson River R. R. Co., 59 N. Y. 468.
5. The defendant was not guilty of statutory negligence in backing its train to make a coupling, in not having red lights on the end of the train, and in the fact that the brakeman did not have a red lamp instead of a white lamp on the Fulton street crossing.  Ordinance 8127, Jewell's Digest (ed. 1887), pp. 177, 179.
6. Ordinance 8127 defines the rights and duties of defendant and its immediate author of title, on St. Joseph street, and other streets named, in hæc verba.  This ordinance con.

tains the express grant to use necessary switches, sidings and turn-tables. There is no restriction forbidding the backing of trains, or requiring red lights at ordinary street crossings, in this ordinance, express or implied. See Port of Mobile vs. L. & N. R. R. Co. 4 South. Rep. p. 106.

7. This defendant is not bound by the restrictions contained in the old Jackson Railroad Ordinance 1031, Jewell's Digest (ed. 1887), pp. 176, 177.

    (a) It never agreed so to be bound, and has never operated St. Joseph street under that ordinance.

    (b) The City Council never intended that it should be so bound.

    Section 8 of Ordinance 8127 makes this defendant subject to all general rules and regulations, as to operation of trains on all streets, e. g., ringing a bell at intervals from Claiborne street to river, and having flagmen at street car crossings.

    Ordinance 1031 contains only special directions peculiar to St. Joseph street, and peculiar to the New Orleans, Jackson and Great Northern Railroad.

    (c) Ordinance 1031 was a mere license to the old Jackson Railroad to use steam as motive power on St. Joseph street, and by its terms is revocable at the pleasure of the City Council; while Ordinance 8127 is a binding contract, made for a consideration, and is irrevocable in terms, so far as the city is concerned. (Secs. 10 and 4, Ordinance 8127.) By Ordinance 8127, the company might use steam or any other appropriate motive power. (Sec. 1.)

8. Defendant was not guilty of negligence at all, under the facts of this case. It was backing its train in a lawful manner, at slow pace, to make a coupling, as it had a lawful right to do; the brakeman with his lamp was on the crossing in advance of the train, and he warned the plaintiff's husband in ample time to stop; failing in that effort, he signalled the train to stop, but it was too late.

9. It is apparent from the evidence of plaintiff's own witnesses that Curley's failure to look about him, before crossing the track, was the proximate cause, if not the sole cause, of the collision. There was nothing to prevent his seeing the train if he had looked.

10. It is a general and almost universal principle of law and common justice, that one cannot recover for an injury sustained, to the happening of which his own negligence has been the proximate cause, no matter whether the defendant be in fault or not. Justice Field in Little vs. Hackett. 116 U. S,; Judge Black, in Penn. R. R, Co. vs. Aspell, 23 Penn. St. 147; Judge Cooley, in Teipel vs. Hilsendegen, 44 Mich. 461; Levy vs. Canal Co., 34 Ann. p. 180; Weeks vs. R. R., 32 Ann. 615; Schwartz vs. R. R., 30 Ann. 15.

11. Absence of negligence on the part of plaintiff will never be presumed when an accident and injury occurs to him. He must show as a part of his case absence of contributory negligence. The burden is upon plaintiff. 3 Ann, 645; Mercier vs Carrollton R. R., 23 Ann. 264; 44 Mich. 461; 64 New York, 535; Beach on Contributory Negligence, pp. 433, 448. Some authorities deny this. Beach. p. 448.

12. Even in those authorities which hold that the foregoing (11) proposition is not good law, it is well settled that if the contributory negligence of the plaintiff appears on his own showing, the court should direct a verdict. Beach on Contributory Negligence, p. 432, and authorities.

---

The opinion of the Court was delivered by

McENERY, J. Mrs. Bridget Curley sues the defendant railroad company individually and as tutrix of her minor son, Thomas G. Curley, for damages for a train colliding with a float driven by her husband, James M. Curley, who was fatally injured by the collision.

The defendant peremptorily excepts to plaintiff's action, because the

petition discloses no cause of action whatever in favor of Mrs. Bridget Curley, individually.

Act No. 71, approved 10th July, 1884, is as follows :

"That Art. 2815 of the C. C. be amended and re-enacted so as to read as follows: Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it. The right of this action shall survive in case of death in favor of the minor children or widow of the deceased, or either of them, and in default of these in favor of the surviving father and mother, or either of them, for the space of one year from the death. The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife, as the case may be."

This act gives to either the minor or the widow the right to sue for the alleged injury to the husband and father. The widow sues for her interest in her own right and for the interest of her minor child in her representative capacity. Both were on equal interest in the same cause of action, by inheritance, and there is a proper joinder of parties. The damages claimed resulted from one cause relating to one liability on the part of defendant.

All parties in interest are before the court, and the judgment will be final and conclusive as to all.

This same question was presented in the case of Mrs. Clairain, individually and as tutrix, vs. W. U. T. Co., 40 Ann. p. 178, and this Court held that the " claim of the widow and children of the deceased for damages was properly presented in a single suit," and " that it was better to end the controversy in the one suit than to remit the plaintiffs to two different actions." The exception was properly overruled.

The facts in this case are as follows : James M. Curley, Mike Curley, his brother, and John Welsh, were in a float, driven by James M. Curley, and when the float was going up Fulton street, and in the act of crossing St. Joseph street, it collided with a freight train of the defendant company. James M. Curley was fatally injured and died at the Charity Hospital a short time after the accident. The collision between the float and the train occurred in the city of New Orleans, about 7 o'clock in the evening, on 22d September, 1887.

Counsel for plaintiffs and defendant agree upon the following facts : That the Ill. C. R. R. Co. is the lessee for 400 years of the C., St. L. & N. O. R. R., a corporation organized under the laws of Louisiana; and that the Ill. C. R. R. Co. " stands in the shoes" of said company as to its rights, franchises and powers within said State, and to operate a railroad along St. Joseph street in the city of New Orleans. That the

rights and franchises of the defendant company were acquired from the purchase of the N. O., J. & G. N. R. R. Co , at the foreclosure sale made by the Circuit Court of the United States in New Orleans, on the 17th day of March, 1887; and by the consolidation of the purchase of said N. O., J. & G. N. R R. Co., with the purchase of the Miss. C. R. R. Co., and that said purchases were duly consolidated according to the laws of the State; that said consolidated company was duly char- tered under the terms of Act 89 of 1878, of the General Assembly of Louisiana.

It is also agreed that the N. O., J. & G. N. R. R. Co. accepted Ordi- nance 1031 (A. S ), adopted August 16th, 1871, by notarial act before Andrew Hero, notary, on August 30th, 1871; and that said ordinance, with the exception of the ringing of bells on St. Joseph street, meas- ured the rights and the duties of said company as to the operation of trains on St. Joseph street, down to the adoption of Ordinance No. 8127 (A. S.), Nov. 9th, 1882, and continued to do so, unless the latter ordinance repeals expressly or impliedly said Ordinance No. 1031.

The lease made by the C., St. L. & N. O. R. R. Co. to the Ill. C. R. R. Co. was executed and delivered on the 13th June, 1882, and the Illinois Central took charge of the railroad, including that part of the line on St. Joseph street, on 1st January, 1883.

Ordinance 1031, Administration Series, 1871, permitted the N. O., J. & G. N. R. R. Co. to run their trains over their track on St. Joseph street, to and from their depot and to the river by steam, with the fol- lowing restrictions:

1st.   That the engine used should be a smokeless dummy;

2d.   That the engine should always be kept in front of the train while in motion;

3d.   That a watchman, with a red lantern or signal flag, should be placed at each street crossing while the train was in motion, and simi- lar lights should be attached to each side of the train when moving at night; and it prohibited the blowing of whistles or the ringing of bells.

Ordinance 8127, which the defendant company claims measures its rights and duties on St. Joseph street, and which does not contain any restrictions peculiar to the operations of trains on St. Joseph or any other street, provides:

1st.   The character of the fuel to be used by the engine;

2d.   Prohibits the company from obstructing the drainage of the streets, and commanding railroad companies to protect and maintain the same to the satisfaction of the city surveyor;

3d. For the pavement of portions of the street through which the road runs;

4th. Regulates the rate of speed and gives the said company authority to use steam or any other appropriate motive power;

5th. The manner of constructing switches, so as not to obstruct the passage of vehicles;

6th. That the road should be subject to all general rules and regulations in existence and which thereafter might be enacted by the City Council.

7. That it should maintain and have regular communication and means of traffic on said lines of railroad.

Ordinance No. 1031 was a special contract and agreement between the city of New Orleans and the N. O., J. & G. N. R. R. Co., accepted by said company in the form of a notarial act. It was a contract that accompanied all the changes in ownership, name and management of said railroad. It bound to its requirements each successive corporation unless abrogated, changed or qualified by the parties to the agreement—the city of New Orleans and the successors and representatives of the road accepting the ordinance.

Ordinance 8127 does not repeal Ordinance No. 1031, either specially or by implication. It does not change, alter or modify the essential requirements contained in the latter ordinance, for the safety of the public. The obligations that the engine shall always be kept in front of the train while moving through the city, and that a watchman with a red lantern or signal flag shall be placed at each street crossing while the train is in motion; that red lights shall be attached to each side of the train when run during the night, are still in force and rest upon the Illinois Central Railroad Company.

Ordinance No. 8127 is general in its character, and applies to all railroads operating trains within the city of New Orleans. Ordinance No. 1031 is a contract entered into with the N. O., J. & G. N. R. R. Co. with special reference to the running of trains on St. Joseph street. The contract is irrevocable, until changed in some legal manner—binding on all parties to it. We are unable to see wherein it has been changed so as to leave the defendant company free to operate its trains exclusively under the provisions of Ordinance 8127. The defendant company claims that its responsibilities are measured by this enactment— and in its construction of this statutory law it totally neglected to comply with the requirements of Ordinance 1031.

The engine was not in front of the train. It had no red lights on its train, or watchman with a red light at the crossing on St. Joseph

street. There were only white lights when any were visible. No wit-
ness says he saw a red light. The witness Cary, who says he was at
the crossing and flaggod the float, states he had a white light. The
electric light was burning at the crossing, and under this light a white
one could, if seen, be scarcely recognized from the flashes of the elec-
tric light.

The train consisted of ten cars, one engine and tender. It had a
crew of three men—one brakeman, a fireman and engineer. The train
was insufficiently manned. The evidence further discloses the fact
that there were usually with the crew two flag boys, but at the time
this accident occurred it does not appear that there was even one boy
at the crossing, for the defendant attempts to show that Cary, the
brakeman, was at the crossing and flagged the float. It was no com-
pliance with the ordinance to place a boy at the crossing. It says a
watchman shall be stationed at each crossing. It contemplates that a
man of mature years and judgment should be charged with the respon-
sible duty of warning the public of danger at the crossings.

We do not intend to intimate that the defendant company's respon-
sibility is fixed and measured exclusively by statute. It is now a well
recognized doctrine that railroad companies are required to exercise
extraordinary precautions for the protection of the public in the man-
agement of their trains running through the streets of a populous city.
It is negligence to omit any reasonable duty necessary for the safety
of the public, particularly at crossings where there are frequent pass-
age and traffic. Independent, therefore, of the ordinance referred to,
the defendant was bound to use the same degree of precaution as is
found in the provisions of that ordinance. They are reasonable, and
the only excuse, as railroad companies, it is presumed, do not inflict
wanton injuries for not strictly observing them, is a false system of
economy.

Was there a want of reasonable care upon the part of James M. Cur-
ley which concurred with the negligence of defendant to cause the
accident?

He was a sober, industrious, prudent and careful man. He had often
crossed St. Joseph street with his float, although witnesses for defen-
dant say sometimes they had to stop the train for him.

There were two men on the float with him. Their testimony is that
they never saw the train until it was on them. The engineer states
that he stopped the train in a few seconds. He stopped it when flagged
to do so. The train pushed the float along the track for some distance
—not exactly stated by witnesses. The train must have been within

a very short distance of the float, within a few feet, when the engineer received the signal to stop. It is not reasonable to suppose that any sane man would drive on a track with a train so near that to attempt to cross would inevitably result in an accident.

James Curley was going up Fulton street. He could have seen the train as it passed under the electric light and went forward on the main track. It may then have reached its destination and commenced to back about the time he reached the crossing. He had, we think, reason to believe that the track was clear; that the train had passed on, and that he could pass with safety; and he had no knowledge of its again returning on the main track. There were no lights to give warning of the approach of a train. There was no watchman or flagman at the crossing. He was bound to use his sight and hearing, and ordinary prudence. The men on the float with him were placed in the same position. Neither of them saw a train, flagman, lights, or any evidence that a train was near. Curley may have looked, but there were no lights to warn him of the proximity of the train. He may have listened, and yet not heard the train. The train was being made up. At one instant it may have been going from him, at another it may have been approaching him. The train was going slow, so was the float. It was moving noiselessly, because it approached the men on the float and was on them before they were aware of the danger.

There is no evidence that the bell was ringing continuously. John Freret, the fireman, defendant's witness, says: "I generally gave the bell a tap on crossing the street." In answer to the question whether he always rang the bell in obedience to the company's regulations, he says: "I do; but sometimes I have to go in front, I mean out on front, of the engine."

James Curley approached the crossing where he had been in the course of his business in the habit of crossing. There was an invitation and inducement for him to cross, because there were no means employed by the defendant company to warn him of the vicinity of a train, and there were no indications at the time he attempted to cross that any train was approaching.

We therefore conclude that the defendant company was solely responsible for the accident, and that there was no contributory negligence on the part of the deceased, James M. Curley.

We are of the opinion that the damages allowed by the jury are excessive. It is therefore ordered and decreed that the verdict and judgment appealed from be amended by reducing the principal thereof to seven thousand dollars; and that as amended it be affirmed, and plaintiffs to pay costs of appeal.