[Filed January 6, 1890.]

## J. M. WOODWARD, RESPONDENT, v. THE O. R. & N. CO., APELLANT.

PLEADING—§ 66, HILL'S CODE.—This section requires the complaint to contain a plain and concise statement of the facts constituting the plaintiff's cause of action. One of the objects to be attained by this enactment was to compel the plaintiff to place upon the record the facts upon which he relies for a recovery.

PLEADING—COMPLAINT—NEGLIGENCE.—In an action to recover damages for negligence the plaintiff must allege in his complaint the acts or omissions of the defendant upon which he bases his right to recovery, and show that they occurred through or by the negligence of the defendant. The plaintiff must state the facts constituting his cause of action. He cannot state one and prove another, nor, if he states one, can he supply the defects in his complaint by evidence at the trial.

NEGLIGENCE—EVIDENCE—INSTRUCTIONS.—In such action the evidence on the part of the plaintiff must be directed to the proof of the facts alleged, and the instructions of the court must be confined to the allegations and proofs. It is the law arising upon those allegations and upon the evidence offered to sustain them which the court is to give to the jury. It is upon the facts thus ascertained and the law applicable to them which will authorize a verdict.

INSTRUCTIONS—ABSTRACT—PROPOSITIONS OF LAW.—Instructions not based on evidence are abstract and erroneous.

RAILROAD—RULES AND REGULATIONS—NEGLIGENCE—PLEADINGS.—Where the complaint contained no allegation that a railroad company had neglected to prescribe suitable rules and regulations for the government and management of its trains, employes and business, it was error in the court to charge the jury in relation to such duty.

APPEAL from the circuit court for Multnomah county.

This is an action to recover damages arising from the alleged negligence of the defendant. The complaint alleges in substance that on January 12, 1884, while employed by the defendant as locomotive engineer upon a freight train, and while at Grant's station, in Wasco county,

XVIII. OR.—19.

18  289
20  489
21  146
21  316
22  568
(Continued.
22*1076
26* 560
27* 94
28* 69
30* 431

18  289
23  332
22*1076
36* 571

18  289
26  393
22*1076
38* 194
18  289
s31  423
a31  543

18  289
f33  286

18  289
37  581
38  352

18  289
39  377

18  289
40  273

18  289
42  260

18  289
45  220

18  289
f47  281

Oregon, the plaintiff was ordered by the defendant to take his train to Dalles City, "regardless of all other trains;" that notwithstanding this order the company permitted another train to start about the same time from Dalles City in the direction of said Grant's station, and that as a result of this alleged negligence on the part of the company a collision occurred between the two trains near Celilo station, in which the plaintiff was injured so that he became insane, and that he remained in this condition until the month of June, 1887; that he is still sick, and believes he can never recover, and claims damages to the amount of $23,700.

This complaint was filed October 15, 1888. The defendant demurred, on the ground that the action had not been commenced within the time limited by law. This demurrer was confessed by the plaintiff, an amended complaint filed substantially like the first, except it was alleged that the plaintiff's insanity continued until the month of May, 1888. The answer denied each of the plaintiff's allegations, and then alleged, as a separate defense, that the plaintiff, while at Grant's station, was ordered to proceed to Celilo station, instead of The Dalles, and there wait for No. 2, the train with which plaintiff collided, and that in disregard of this order he did not stop at Celilo, but passed the station and run into train No. 2 west of that station; that the train with which plaintiff collided was a passenger train and had the right of way on the road, which plaintiff well knew; that as the plaintiff was approaching Celilo a flag was displayed in plaintiff's view, notifying him to stop, which signal he well understood, and that the accident and injuries were the result of the plaintiff's misconduct. The answer also relied upon the statute of limitations. The reply denied the new matter contained in the answer. The jury returned a verdict for the plaintiff in the sum of $9,073, upon which judgment was duly entered, from which this appeal was taken.

It is admitted on the record by plaintiff that his allegation that he was ordered by the defendant to run with the

locomotive and train in his charge at the time of the injury complained of, and while at Grant's station, in Wasco county, to Dalles City, in said county, regardless of all other trains, was a mistake on his part; that such was not the fact, but that the fact was that while at Grant's station, on the day of the accident, he received the following order from the defendant as to the running of the locomotive and train of which he had charge as engineer: "You can have until 7:10 to make Celilo for No. 2;" and that it was while running on said order that the accident occurred. This statement was made by plaintiff's counsel in his opening to the jury, and is shown by the bill of exceptions; but no attempt was made to amend the pleadings so as to conform to the fact.

To properly understand the rulings of the court in the giving of instructions, some reference to a portion of the evidence is necessary. The plaintiff, on his examination in chief, in speaking of his orders on the day of the accident, testified as follows:  Q.  Do you remember what the orders were?  A.  Well, as I remember the orders, I cannot be positive, but I had regardless orders to The Dalles. Q.  What do you mean by that?  A.  A regardless order is to run regardless of all trains.  Q.  To The Dalles?  A. To The Dalles.  Q.  What kind of a train did you have that day?  A.  I think I had forty cars of wheat.  On his cross-examination the plaintiff testified as follows:  Q. You say you think you had orders to go to The Dalles regardless of all other trains?  A.  Yes, sir.  Q.  You concluded that you had a right to run right through to The Dalles?  A.  No; I was going to stop there for water; that is all.  Q.  But except for that you would have a right to go through to The Dalles?  A.  Yes, sir.  Q. You were not going down, then, to side-track, or anything of that sort?  A.  No, sir.  Q.  No intention of that?  A. No, sir.  During the cross-examination of the plaintiff, and by consent, the defendant put in evidence its rules, which plaintiff had in his possession when the accident occurred, amongst which were the following:

1.   "Passenger trains will be known as first-class trains; all others on schedule are second-class trains.   Trains of any inferior class will wait indefinitely for trains of a superior class, and will be kept entirely out of their way, and clear main track at least ten minutes before superior train is due.   Wild trains will be kept out of the way of all regular trains.   Trains going from Portland, or east, have the right to the track over trains of the same or inferior class going in the other direction, and will wait only five minutes at appointed places of meeting for an expected train, and then proceed, keeping the five minutes behind leaving time until after the delayed train is passed. Trains not having the right to the track will keep entirely out of the way of trains of the same or superior classes moving in the opposite direction, unless moved by the superintendent or assistant superintendent.   Regular trains twelve hours or more behind card time lose all rights."

3.   "Where trains are to meet each other, the train having the right to the road shall occupy the main track, except where there are special orders to the contrary, or it shall be impracticable thus to pass, in which case sufficient precaution shall be used to prevent accident or unnecessary delay, and trains entering side track will enter at the nearest end from the direction in which they are approaching, when both ends are connected.   When not connected, and the train is obliged to back in, a man must be sent ahead a suitable distance with a red flag and proper danger signals to stop approaching trains."

57.   "All trains will come to a full stop at telegraph stations, and will be run as nearly as possible to schedule time, under no circumstances leaving a station earlier than the specified time.   Speed must be reduced to eight miles an hour while crossing truss bridges and long trestles, and trains must be kept under perfect control while passing over tracks and bridges undergoing repairs likely to render them unsafe, and while passing through stations where trains do not stop.   Operators receiving train orders must display a green signal.   When operators receive a train

order they must at once display a green signal, whether
the train for which orders are sent is at their station or
not.   When the green signal is shown at the station
the conductor and engineer must at once report to the tele-
graph office for orders."

60.  "In all cases approach stations slowly, and if
another train be there never attempt to pass it unless
absolutely certain that it is out of the way and the
switches all right.   Trains will not be allowed to obstruct
streets or roads to exceed ten minutes."

69.  "Every rule in this schedule is to be observed.   No
one has authority to omit or vary from a single rule
or requirement, and any person not willing to conform
cheerfully and promptly to such orders as may be found
necessary for the government of the road is particularly
requested to leave the service of the company."

70.  "Every person on entering the service of the O. R.
& N. Company will be furnished with a copy of these regu-
lations, with which it will be his duty to make himself
fully acquainted; and he must also make himself familiar
with the schedule and accompanying instructions that may
from time to time be issued, and he must keep a copy of
them and these regulations upon his person, when on duty,
as a strict sense of obedience to them in every particular
will be required of him.   Custom and usage not conform
ing to these regulations will not be tolerated."

John Moore, a witness for plaintiff, testified in substance
that he was the conductor on the freight train at the time
of the accident—was in the caboose at the rear; that he
expected the passenger train to be on time at Celilo as per
time-table; that upon receipt of the dispatch, "You can
have till 7:10 to make Celilo for No. 2," they immediately
repeated it back to the dispatcher as received, with the
addition of the word "thirteen," which signifies "we
understand," making the return dispatch read "we under-
stand we may have until 7:10 to make Celilo for No. 2;"
that the plaintiff had the dispatch and was running on it,
and that witness never saw plaintiff after leaving Grant's

until after the accident, or gave him any orders; that he (witness) knew the passenger train would be running on schedule time and would be entitled to be at the station at 8:50; that the rules required them to approach the station cautiously for the purpose of seeing whether there are any signals or orders; that if he was approaching a station and saw a green light, which was a signal to stop, he would not run by the station; but they usually approached a station slowly enough to see whether there was a signal or not, and that he never did in his life go by that or any other station without stopping when there was a green light out. He further testified that there was a green light displayed on the platform, in the most prominent place they could have put it, at the time of the accident. · He further said, in answer to a question by the court, the way they give orders, they tie up the train they are going to give orders against; they would give the station agent orders to hold that train for orders. The defendant here offered without objection the dispatch to the agent at Celilo, "Hold No. 2 for orders."

John T. Cauley, for the plaintiff, testified he was fireman on plaintiff's train at the time of the accident; that they were about thirty-five or forty yards from the station when they saw the green light out on the platform, then saw the operator out with a white light and swinging it backward and forward and across the track to stop them; that plaintiff then put on the air and reversed the engine; that after they got "pretty near opposite the station, then we saw the glare of the headlight (of the other engine) on the water tank," and that they struck the other engine about ten or twelve cars west of the station; that according to that order and the rules of the company they expected to meet passenger train No. 2 right here in front of the station, but they had been in the habit, and it had been the custom when the time-card came out, we had been passing here down to the long siding; saw the white light being swung across the track, and that it was the signal to stop; that they never went to the siding when there was a signal to

stop; never came in on the side track until they found out whether the green light was for the train that was on or what; they always stopped and found out, and then went down to the side track.

This is the substance of the evidence, on the part of the plaintiff, tending to prove the defendant's negligence, and much evidence was given tending to prove the nature and extent of the plaintiff's injuries.

Much evidence was also given, on the part of the defendant, tending to prove due care on their part in the running of the two trains at the time of the unfortunate collision, and that if their rules and orders had been observed by the plaintiff a collision would have been impossible. The instructions excepted to are given in the opinion.

*C. B. Bellinger,* for Appellant.

*A. L. Fraser* and *G. W. Yocum,* for Respondent.

STRAHAN, J.—The question presented by this record for our consideration arises out of the exception taken by the appellant to the charge of the court, and to the refusal of the court to give an instruction asked by the defendant. Amongst other instructions the court gave the jury the following, to which the defendant duly excepted:

3. The jury, in determining this question of negligence, should consider all the facts presented by the evidence. They should take into consideration the rules of the defendant company, the situation of the Celilo station, the grade of the road, the curves, the obstructions to the view of an engineer bringing a train from either direction to the station, the situation of the switches, the weight of the train which the plaintiff was bringing in.

4. The jury should also take into account the fact, undisputed in the testimony, that the conductor and engineer of the passenger train, on the night of the accident, had no information of the delay of the defendant's train, or of the extension of his time to 7:10 o'clock.

5. The jury will, upon a consideration of the whole evidence, say whether the defendant omitted anything

which, had it been done, might have prevented the accident, or did any act that ought not to have been done which contributed to the accident.

6.   The jury must consider the acts or omissions of any train dispatchers as the acts or omissions of the defendant.

7.   It is the duty of a railway corporation to prescribe a system of rules and regulations for the government and management of its trains and employes, and its business, and it is for the jury to determine whether or not such rules and the conduct of the defendant were sufficient to reasonably guard against damage in this case.   And when the time-table was annulled by the train dispatcher at The Dalles, you will consider whether the defendant used all reasonable means and precautions to prevent accident.   It was the duty of the dispatcher, in all cases of doubt, to take the safe side, as by rule 55 of the company.

Instructions numbered three and five present somewhat analogous questions, and may be considered together. The point of objection to these instructions is, that they submit to the jury questions entirely outside of and beyond the allegations of the plaintiff's complaint, and apparently leave it to the jury to find as they may think proper, regardless of the particular acts of negligence charged in the complaint.   And this leads us to the inquiry whether or not the plaintiff must allege the particular acts of negligence constituting his cause of action, and then confine his proof to those specific allegations.   Our Code, ₴ 66, requires the complaint to contain a plain and concise statement of the facts constituting the plaintiff's cause of action, and one of the great objects to be attained by this enactment was to compel the plaintiff to place upon the record the specific and particular facts which he claims entitles him to recover.   The field of inquiry is thus narrowed, and the defendant is enabled to come into court advised beforehand of the particular facts he must come prepared to contest.   Does this rule apply to an action of negligence?   In *Heilner* v. *Union County*, 7 Or. 84, this court held in an action for negligence in allowing a bridge

to be and remain out of repair, that the facts constituting the negligence should be averred.   So it was held in *Lakin* v. *The O. P. R. R. Co.*, 15 Or. 220, that a defect of a car or an engine could not be shown in an action where the damage was alleged to have occurred through the negligence of the employes, and the defects of the engine or machinery were not relied upon as a cause of action.   *Waldhier* v. *H. & St. Joseph R. R. Co.*, 71 Mo. 514, is more directly in point.   It was there held that where the allegation in a petition against a railroad company is that the plaintiff received the injuries complained of through the negligence of the company in having and using defective machinery, and the running and managing its railroad and cars, and the proof was that the injury was occasioned by a broken frog, that the plaintiff could not recover.   To the same effect is *Meyer* v. *Atlantic & Pacific R. R. Co.*, 64 Mo. 542. In that case the court said: "It is only by statutory enactment that the defendant is required to sound the whistle or ring a bell eighty rods distant from a point where the railroad crosses a public road, and if the defendant was intended to be made liable on account of this neglect, such intention should in some manner have been expressed in the petition, either by statement of the facts which under the statute created the liability, or by some appropriate reference to the statute itself." So in *Edens* v. *The H. & St. Joe R. R. Co.*, 72 Mo. 212, it was held that whatever was the real ground of complaint should be stated in the petition.   Hence, in an action against a railroad company to recover for injuries alleged to have been sustained through the company's negligence, if the negligence consisted in having a defective sand-box on the engine and in keeping a defective frog in the track, the petition should not charge negligence in running the cars.   So in *Field* v. *The Chicago, Rock Island & Pacific R. R. Co.*, 76 Mo 614, the court said: "The plaintiff must state the facts which constitute his cause of action.   He cannot state one and prove another; nor, if he states none, can he supply the defects in his petition by evidence at the trial." So, also, in the *Chicago,*

*B. & Q. R. R. Co.* v. *Harwood*, 90 Ill. 425, it was held in an action against a railroad company to recover damages for the killing of plaintiff's intestate, through negligence and carelessness in the managing and running of a train of cars, the declaration should show in what such negligence and carelessness consisted, and not charge the same in general terms without disclosing any specific acts or omissions. And *Thomas* v. *The Georgia Railroad and Banking Co.*, 40 Ga. 231, holds that a plaintiff must recover on the particular acts of negligence charged in the complaint, and that other acts of negligence, not alleged, cannot be made the basis of recovery. So in *Long* v. *Doxey*, 50 Ind. 385, it was held that a right to recover on a complaint charging negligence in the use of defective machinery could not be supported by proof of negligence in employing unskillful men to run the machinery. So also in the *Ohio & Mississippi R. R. Co.* v. *Selby*, 47 Ind. 471, in an action for negligence, it was held that an act, the doing of which was complained of, and that such act was negligently done, must be alleged ; also that when the act complained of was sufficiently stated, it was only necessary to aver that such act was negligently done, without setting out in detail the particulars of the negligence. It is true in some jurisdictions it seems to be held sufficient to allege generally that the injury complained of was carelessly and negligently inflicted upon the plaintiff, or that by reason of the carelessness and negligence of the defendant, the plaintiff was injured ; but this mode of statement has never been sanctioned or approved in this State, is at variance with the plain requirements of the Code, and would give the defendant no notice of the acts claimed to be negligent, so that he might come prepared to meet them.

Having reached the conclusion that the acts of the defendant which are relied upon as a basis of recovery and which must be the proximate cause of the injury, must be alleged in the complaint, it follows as a necessary consequence that the evidence on the part of the plaintiff must be directed to the proof of those facts, and the instructions of

the court must be confined to the allegations and proofs. It is the law arising upon these allegations and upon the evidence submitted to sustain them which the court is to expound to the jury.    It is upon the facts thus ascertained and the law applicable to them which will authorize a verdict.    Such, in effect, was the ruling of this court in *Bender* v. *Bender*, 14 Or. 353, and we see no reason to depart from it.

Turning now to instructions three and five, it will be seen that the field for inquiry for the jury is enlarged and extended very far beyond the plaintiff's allegations or any evidence in the case upon which they could possibly be based.    We have held it to be error for the trial court to give to the jury instructions, however correct as abstract propositions of law, if not based on evidence.    *Breon* v. *Henkle*, 14 Or. 494; *Roberts* v. *Parrish*, 17 Or. 583.    These instructions were therefore erroneous for both of the reasons suggested— that is, they were outside of the plaintiff's allegations, and therefore too broad in submitting to the jury, or in at least indicating to the jury, that they might find other negligence than that alleged in the complaint, and also in submitting abstract propositions of law to the jury.    With such instructions before them the jury might well have considered, and were instructed to say, whether the defendant omitted anything which, had it been done, might have prevented the accident, or did any act that ought not to have been done which contributed to the accident, whether such act was charged in the complaint as negligence or not.

Instruction seven was also erroneous, for the same reasons.    There was no allegation in the complaint that the defendant had neglected to prescribe a system of rules and regulations for the government and management of its trains and employes and business.    No doubt it is bound to prescribe such rules, and a failure or neglect to do it, whereby an injury occurs, would render it liable; but before such question of negligence can properly be tried before a jury the act of negligence must be alleged in the complaint,

and it must appear that it was the proximate cause of or produced the injury.

This opinion might properly end here, but inasmuch as the cause must be remanded for a new trial, it may be proper to say that I have examined this record carefully for some proof of negligence on the part of the defendant which might properly have been submitted to the jury, and upon which instructions in relation to negligence might properly have been predicated, but I have been unable to find any such proof in the record—unless it was also coupled with evidence which established contributory negligence on the part of the plaintiff, which would necessarily have defeated a recovery.

The plaintiff's counsel argued here that having extended the time of train No. 7, which was the plaintiff's train, to reach Celilo, it was bound to notify the conductor of train No. 2, which was the east-bound passenger train, of such change. Whether, under the circumstances, the plaintiff ought to have given train No. 2 such notice, we do not think it necessary to determine, for the reason that such want of notice to that train in no manner contributed to the injury. The plaintiff had such notice, and then run his train past Celilo, where the collision occurred. If the collision had occurred east of Celilo, before 7:10, a different question would have been presented. He also disobeyed or disregarded the signals that were given him at Celilo to stop. In any view that could be taken of this evidence, this conduct on the part of plaintiff contributed to the injury,—in fact, was its sole cause. If the plaintiff had either heeded his instructions or the signals given to him, a collision was impossible.

Let the judgment of the court below be reversed and the cause be remanded for a new trial.