Argued December 9, 1909, decided January 4, 1910.

## LAURY *v.* NORTHERN PACIFIC TERMINAL CO.

[105 Pac. 881.]

RAILROADS — OCCUPATION OF STREET — RIGHTS OF PUBLIC — CARE REQUIRED.

1. The public has an equal right with a railroad company to the free use of a city street upon which the railroad track is laid, and the railroad company will not be permitted to omit any reasonable duty that may tend to the safety of the public upon such street, but are required to exercise extraordinary precautions for the protection of the public in the management of their trains running through the streets of a populous city.

RAILROADS—INJURIES TO PERSON ON TRACK—EVIDENCE—QUESTION FOR JURY.

2. Evidence in an action for injuries received while crossing a railroad track operated on a street *held* sufficient to take the case to the jury on the issue of negligence.

INSTRUCTIONS REQUESTED—RAILROADS—INJURIES TO PERSONS ATTEMPTING TO CROSS THE TRACK.

3. Under the evidence in this case no error was committed by the court in refusing to charge the jury as follows: "If you believe from the evidence that at the time plaintiff started to cross the railroad track of defendant the car with locomotive attached was at rest, and the

defendant previous to starting said car caused the bell on the engine to be rung as a notice that said car was about to move, but that notwitstanding such ringing of the bell the plaintiff started to cross said track in front of said car and so close to said car that she was struck and knocked down as described in the testimony, I charge you that such act of plaintiff in attempting to cross said track in such close proximity to said car was an act of carelessness on her part which would prevent her recovering in this action, and your verdict must be for the defendant."

RAILROADS—CROSSINGS—RIGHTS OF PUBLIC—NEGLIGENCE PER SE OF COMPANY.

4. Railroad companies are bound to use reasonable care not to endanger those who might be lawfully upon its tracks at a city street crossing, and to back a train on a dark night over a public railroad crossing without warning, by blowing a whistle or ringing a bell or guard or light on the advancing reversed car, is negligence *per se*.

RAILROADS—INJURIES TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

5. Plaintiff was injured by being run over by a car while crossing a street on which the railroad was being operated. It was dark, and the car was being backed by an engine which was also backing. There was no light displayed at the rear of the car, and no switchman to give warning of its approach, but the company claimed that the bell was rung. *Held* that, in order to charge plaintiff with contributory negligence, it must be shown that she heard the bell.

From Multnomah:  JOHN B. CLELAND, Judge.

Statement by MR. CHIEF JUSTICE MOORE. .

This is an action by Stella Laury against the Northern Pacific Terminal Company to recover damages for a personal injury.

The complaint avers, in effect, that the defendant is a corporation engaged in switching engines and cars in terminal yards controlled by it in Portland; that one of its tracks is laid along North Front street, a public highway in that city; that on October 25, 1907, while the plaintiff was passing along and across such street, the defendant, without giving her any warning of the approach of a car, and without having any person in charge thereof, ran it upon her, throwing her upon and forcing her along the track until the wheels of the car ran over and crushed one of her lower limbs, thereby damaging her in a stated sum.

The answer denies the material allegations of the complaint, and avers that the injury of which the plaintiff

complains was entirely due to her own carelessness, setting forth the particulars thereof.

The reply puts in issue the allegations of new matter in the answer, and, the cause having been tried, a judgment was rendered against the defendant in the sum of $7,500, from which it appeals.                              AFFIRMED.

For appellant there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

For respondent there was a brief over the names of *Mr. Roger B. Sinnott* and *Messrs. Bennett & Sinnott,* with an oral argument by *Mr. Alfred S. Bennett.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. It is maintained that errors were committed in denying a motion for a judgment of nonsuit, and in refusing to direct a verdict for the defendant, to which rulings of the court exceptions were taken. As these propositions substantially embody the same legal principle, they will be treated as a single question, to determine which the testimany relating to the alleged negligence of the defendant will be reviewed.

The plaintiff, on October 25, 1907, the day she was hurt, had been employed in Portland at the factory of the American Can Company, located on the northerly side of North Front street, which highway at this place extends north about 48° west. In the center of that street is laid one of the defendant's railroad tracks, and connected therewith by a switch, about 100 feet easterly of the factory, is a spur track which curves northerly to and runs parallel with that building. Fourteenth street extends due north and terminates at North Front street, and from the east line of the former highway at its junction with and at a right angle to the latter street extends a plank walk parallel to and connecting with the easterly side of a passageway, about 10 feet wide, at that end of

the can factory, used by the employes as an entrance thereto. There were employed by the American Can Company, on October 25, 1907, about 50 men and as many women, who ceased working on that date at 5:30 P. M., and, after turning in their time checks and obtaining their wraps, they passed out at the easterly end of the factory, thence along the passageway to North Front street, where they found, standing on the spur track, a furniture car, the then westerly end of which obstructed a part of the route. A locomotive headed southeast also stood, at that time, on the spur track nearer the switch, but whether or not a coupling had then been made is disputed. After several of the can company's employees had safely passed over the unimpeded portion of the crossing, the engine pushed the car back until it entirely covered the space occupied by the passageway. While the car was thus moving, two young women, Teresa Schoener and Mary Heitzenreter, who worked in the can factory, were in the center of the spur track, immediately in front of the car, whereupon a switchman, standing on the ground, seeing them and realizing their imminent danger, gave a signal with his lantern, causing the engine to be halted. Before the signal was given, however, Mrs. Lillie Larmon, another employe, in attempting to cross the track, was struck by the car, but her husband, noticing her peril, rescued her from danger. The plaintiff quit work at the time stated, but in a few minutes thereafter discovered that her pocketbook had been left in the room in which she had been engaged, whereupon she returned and obtained the purse. She then passed over the walk to the spur track where she found the furniture car entirely obstructing the passageway, and not knowing that her associates had been endangered by the car, which then was stationary, she attempted to pass around the westerly end of it and within a few feet therefrom. When she was about the middle of the track the car was again moved

slowly backwards, striking, prostrating and rolling or pushing her along the track until the forward wheels on the opposite side passed over one of her lower limbs, crushing it and necessitating amputation below the knee.

The plaintiff, as a witness in her own behalf, testified that when she thus came down the passageway, she stopped and looked and listened before attempting to pass over the track; that she then saw the engine headed southeast and not attached to the furniture car; that no bell was rung or whistle sounded, nor was any servant of the defendant present to warn her that the car was about to be moved in either direction; and that thinking it was safe to cross she attempted to do so, when the car was backed, injuring her in the manner indicated. Several witnesses who appeared for the plaintiff at the trial indirectly corroborated her testimony by stating that they did not hear any bell or whistle prior to the injury. The yard switchman who saw the two young women when they were so nearly caught by the car testified that he chided them for their carelessness, and further stated that the bell on the engine was constantly rung until after the plaintiff was hurt, which latter declaration is corroborated by the other employes of the defendant who were then engaged at that place.

Mrs. Larmon testified that after the two young women crossed the track this switchman turned his back to the car and joked with them, and for that reason he did not observe the plaintiff until his attention was attracked by the outcry of herself and others.

It appears that an electric lamp was suspended over the railroad track some distance northwest of the furniture car, but its rays evidently did not illumine the track at or near the passageway, for nearly all the defendant's employes who were engaged at that place when the injury occurred testified that it was dark. J. Braun, the fireman then in the engine, in answer to the question, "Did you

see the people that came out of the can company?" replied "No; it was dark, I could not see them."

It is not alleged in the complaint that a public crossing is maintained at the juncture of Fourteenth and North Front streets, but, from a copy of a plat of the vicinity which has been brought up by defendant, it is evident that the walk hereinbefore mentioned was built to accommodate travel, and having been laid across a public thoroughfare its existence was thus clearly indicated on the ground, calling attention thereto and requiring of the defendant a greater degree of care and watchfulness here than is usually demanded when moving a train along an ordinary highway. Whether or not the plank walk may be regarded as a public crossing is immaterial, for as the accident happened westerly thereof, but on a city street, where the defendant is required to exercise a very high degree of care in operating its engines and cars, it will not be permitted to omit with impunity any reasonable duty that may tend to the safety of the public, which has an equal right with the defendant to the free use of the highway. *Chicago, Burlington & Quincy R. R. Co.* v. *Stumps,* 69 Ill. 409. "It is now a well-recognized doctrine that railroad companies," says Mr. Justice McENRY in *Curley* v. *Illinois Central Railroad Co.,* 40 La. Ann. 810, 816 (6 South. 10), "are required to exercise extraordinary precautions for the protection of the public in the management of their trains running through the streets of a populous city."

2. Assuming the plaintiff's theory to be true, as outlined by her testimony, that after darkness had set in, the bell was not rung or the whistle sounded when the car was backed over the crossing and along the street in a city like Portland, without displaying a light or posting a switchman at or on the approaching end of the car in order that travelers would be warned of any peril, and so that this guard could have signaled the engineer and

applied the brakes in case of danger, thus avoiding injury to persons on the track, were facts from which the jury could determine the degree of care exercised by the defendant at the time and place mentioned. The testimony given on behalf of the plaintiff, though disputed by the defendant, is to the effect that at the time she was injured the switchman was not giving any attention to the moving of the car, but had turned his back thereto, and was jesting with the two young women who were so nearly run over. Mrs. Larmon, referring to such neglect of duty, testified that she advised these young women, to whom the switchman was then talking, to tell him to mind his own business. The failure of the defendant to give the necessary warning signal, as asserted by plaintiff and her witnesses, or to station a watchman at the crossing, and the carelessness of the switchman as above outlined, when the want of sufficient light made the movement of the car obscure, and its slow motion probably rendered its approach almost noiseless, were circumstances tending to show a lack of ordinary care, from which negligence might have been inferred, which inattention authorized a submission of the cause to the jury. A consideration of the same facts also shows that no error was committed in refusing to direct a verdict for the defendant.

3. The court, having declined to give an instruction requested by defendant's counsel, an exception was taken to the refusal to charge the jury as follows:

"If you believe from the evidence that at the time plaintiff started to cross the railroad track of defendant the car with locomotive attached was at rest, and the defendant previous to starting said car caused the bell on the engine to be rung as a notice that said car was about to move, but that notwithstanding such ringing of the bell the plaintiff started to cross said track in front of said car and so close to said car that she was struck and knocked down as described in the testimony, I charge you that such act of plaintiff in attempting to cross said track in such close proximity to said car was an act of carelessness

on her part which would prevent her recovering in this action, and your verdict must be for the defendant."

The theory of plaintiff's counsel, as evidenced by the testimony sought to be elicited at the trial, is that the engine was run forward southeast on North Front street over the switch mentioned, and thence backed on the spur track to where the furniture car stood; that the first attempt to connect the engine and car, which was made when the two young women were endangered, proved unsuccessful because the automatic couplers were not properly opposed to each other in consequence of the curvature of the line of railway at that place; and that when the plaintiff reached the spur track the engine and car were stationary and unconnected, but in making the second attempt to couple them she was injured. It is conceded that the locomotive and car were at rest, as indicated in the request for the instruction, but nearly every other important fact stated therein is disputed. Taking for granted that none of the facts so controverted are assumed in the request, and that the phrase "if you believe" is understood as limiting each clause, it will be seen that the ringing of the engine bell is the important incident, which is undertaken to be emphasized by the language employed.

4. A noted author in discussing the obligations devolving upon railroad companies says: "The danger to the public at crossings or other places where the public have a right to be in common with the railway company, of backing its cars without having a man standing on the foremost car to look out, to give warnings to the engineer and to the endangered traveler, and to apply the brake, is so obvious as not to require discussion." Thomp. Neg. § 1571. In *Bowles* v. *Chesapeake & Ohio Ry. Co.*, 61 W. Va. 272 (57 S. E. 131), a headnote is as follows: "It is negligence *per se* to back a train on a dark night over a public railroad crossing without warning, by blowing a

whistle or ringing a bell or guard or light on the advancing reversed car. The company must adopt some means to warn travelers of danger, such means as will be equally efficient as the bell or whistle warning in the case of an advancing unreversed train." In *Union Pacific Railroad Co.* v. *Connolly,* 77 Neb. 254, 269 (109 N. W. 368, 374), the defendant in error having recovered $27,500 as damages for the loss of his feet, which were severed by the backing at night of an engine and four or six cars over him at a crossing, the judgment was affirmed on appeal, the court saying:

"That the rear car of that portion of the train displayed no lights, and that no person was stationed thereon, or at the crossing, to give warning of its approach to the crossing, are facts conclusively established by the evidence and practically conceded. The accident occurred in a populous community and within the limits of a considerable city. It occurred in the nighttime, and at a crossing in common use at all hours, and where, as we have seen, the defendant company was charged with the duty of exercising reasonable care to avoid injury to those crossing its tracks. It is true, it seems to be conceded that the bell was rung and the whistle sounded to give warning that the train was moving. But the mere fact that the statute requiring such warnings was complied with does not of itself show that the defendant has discharged its full duty to those using the crossing. It was bound to use reasonable care not to endanger those who might be lawfully upon its tracks at the crossing, and whether, in view of the time, place and circumstances, precautions in addition to those prescribed by the statute were required, was a question for the jury. * * The crossing was in common use day and night. It was across tracks in constant use, and in a populous and busy community. That due care required more than ringing the bell and sounding the whistle to give warning of a freight train backing toward and over such crossing in the nighttime is certainly not an unreasonable inference in view of all the facts and circumstances."

5. In the case at bar if, in the darkness, the light of the locomotive had been directed towards the plaintiff and no

intervening object had obscured its gleams, the ringing of the bell, whether or not she heard it, might possibly have afforded such warning of the contemplated movement of the engine as the necessity demanded, for the illumination should have been sufficient to attract her attention, if she had given any heed thereto. When, however, the locomotive was headed from her, and, as she claims, not coupled to the furniture car which intervened, and there was no light or switchman thereon to warn her in the darkness that the car was to be backed, it was essential that she should have heard the bell, if it was rung, in order to charge her with contributory negligence in risking her life by attempting to cross the track. The instruction requested does not place the plaintiff's alleged contributory negligence on her hearing the bell rung, but upon the mere ringing thereof. The language suggested to the court was not, in our opinion, sufficient, under all the circumstances involved, and though the defendant was entitled to have its theory of the case submitted to the jury, the requested instruction was too restricted.

No issue is made by the pleadings as to the want of either natural or artificial light, but as the testimony tends to show that at the time of the injury the place where it occurred was dark, the court properly kept in mind that fact, as a condition from which the jury might deduce the plaintiff's contributory negligence, only in case they found she heard the ringing of the bell before she attempted to cross the railroad track. If the darkness had been called to the attention of the jury in any part of the charge, so that a finding thereon had been requested, the statement thereof, though hypothetically made, would probably have been erroneous, because it was not predicated on any fact maintained by either of the parties and controverted by the other.  *Woodward* v. *Oregon R. & N. Co.* 18 Or. 289 (22 Pac. 1076) ; *Buchtel* v. *Evans,* 21 Or. 309 (28 Pac. 67) ; *Coos Bay R. R. Co.* v. *Siglin,* 26 Or. 387 (38 Pac. 192.)

The darkness has been adverted to by way of argument and to explain that as no light on the engine or employe's lantern was visible to the plaintiff, when she attempted to cross the track, it was necessary that she should have heard the ringing of the bell. As the requested instruction was faulty in not specifying that fact, no error was committed in refusing to give it.

It follows from these considerations that the judgment should be affirmed, and it is so ordered.

AFFIRMED.