Argued April 8, decided July 13, 1909.

ABEL *v.* COOS BAY, ROSEBURG & E. R. & N. CO.

[102 Pac. 796.]

MASTER AND SERVANT—INJURY TO SERVANT—QUESTION FOR JURY.

1. In an action for injuries to a brakeman owing to the train on which he was riding having passed through an open switch and collided with a car, the

question whether he was negligent in riding on a step of the tender *held* one for the jury.

MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

2. Where, in an action for injuries to a brakeman on a logging train owing to the train having passed on an open switch and collided with a car, the evidence showed that it was customary for the switch to be left open after certain switching operations, which had recently been completed when the accident occurred, and that plaintiff had reason to believe that it was open, the condition of the switch did not constitute negligence. The question whether it was the proximate cause of the injury, *held* one for the jury.

MASTER AND SERVANT—INJURY TO SERVANT—QUESTION FOR JURY.

3. In an action for injuries to a brakeman owing to the train on which he was riding having passed upon an open switch and collided with a car, the question whether defendant was negligent in leaving the car on the track, *held* for the jury.

MASTER AND SERVANT—INJURIES TO SERVANT—INSTRUCTIONS.

4. Plaintiff was employed as a brakeman on a logging train by railroad company which operated logging trains on a certain branch of the road, and on a spur running from the branch, and plaintiff knew that it was customary to leave the switch from the spur to the branch open on to the spur after certain switching operations. Plaintiff was injured owing to the train on which he was riding, passing upon the open switch and colliding with a car at a time when he had reason to believe that the switch was open owing to the operations referred to having recently been completed, and the court charged in an action for the injury that, if the branch was in general use for passengers and freight service, it would constitute a main line, and was subject to the customs and rules of railroads as to main lines and spurs. *Held*, that the instruction was erroneous.

From Coos: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action by Albert Abel against the Coos Bay, Roseburg & Eastern Railroad & Navigation Company, for an alleged personal injury. The defendant company is the owner of a railroad from Marshfield to Myrtle Point, in Coos County, Oregon, about 26 miles. Some distance south of Marshfield, on the main line of the road, is a branch or spur from Beaver Hill Junction to Beaver Hill, about 1½ miles, and from a point on this branch, about three-eighths of a mile from Beaver Hill Junction, most of which distance the track is on a trestle, is a branch from the Klondyke Spur Junction to Klondyke logging camp, about a mile. At the time of the injury complained of the road was operated by a receiver appointed by the United States district court

in the case of the *Farmers' Loan & Trust Co.* v. *Coos Bay, Roseburg & Eastern Railroad & Navigation Co.* (this defendant) *et al.* Thereafter, and prior to the commencement of this action, this suit was dismissed, and the receiver discharged, without prejudice to the rights of any person who theretofore by leave of court had been authorized to sue the receiver to continue such suit against the defendant railroad company.

The Beaver Hill branch was used for transporting coal and logs from Beaver Hill, and the Klondyke Spur for transporting logs from Klondyke logging camp, to the main line and thence to Marshfield. Upon the day of the accident, train No. 1, being a logging train, upon which Boone was conductor and plaintiff and Thomas, brakemen, brought a train load of logs to Klondyke Spur switch from Klondyke logging camp, and No. 2—also a logging train—upon which Cardell was conductor, brought from Beaver Hill a train load of logs to the Klondyke Spur switch, and the two trains were there consolidated, train No. 2 taking the cars of No. 1 on the Klondyke switch, and the engine of train No. 1 being in front as a helper. The last car of logs in train No. 1, on account of a broken reach, was left on the Klondyke Spur, 200 or 300 feet out from the switch, and the train pulled out, leaving the switch open, as was usual in such cases. The engine of train No. 1 and its crew helped train No. 2 over the divide toward Marshfield, on the main line, and at the summit took the caboose, Conductor Boone, and brakemen, Thomas and Abel, and some track layers, and returned toward Beaver Hill, the engine running backward, the caboose behind, and the two brakemen riding on the tender. As they left Beaver Hill Junction, on the Beaver Hill branch, plaintiff got on an iron step on the right side of the tender at the front, which is placed there for the convenience of the brakemen. He says he took that position for the purpose of throwing the Klondyke switch. This was after 7 o'clock

P. M. It was dark, rainy, and windy. The engine was running quite rapidly, and he did not see the switch or know when he reached it until he heard the click of the wheels crossing it, when Thomas noticed they were taking the Klondyke switch, and he told plaintiff to jump. Plaintiff's lantern went out, and, not knowing what was wrong, he started to climb upon the end of the caboose, when it struck the car of logs, and the end of a log caught his leg and broke it. Plaintiff alleges that defendant was negligent in leaving a loaded car on the Klondyke spur, and in leaving the switch open; in failing to advise him of these conditions, and also alleges that he did not know the car was left on the spur or that the switch was open.

Defendant denies liability, and alleges that the Klondyke spur was frequently used upon which to leave cars, and that it was customary for the last train out of that spur in the evening to leave the switch open; that these acts were not negligent, and that the accident was the result of plaintiff's negligence in riding on the step of the tender from the Beaver Hill Junction, it being a dangerous place. Verdict was rendered for plaintiff, and defendant appeals.                     Reversed.

For appellant there was a brief over the names of *Mr. John S. Coke* and *Mr. A. J. Sherwood,* with an oral argument by *Mr. Sherwood.*

For respondent there was a brief over the names of *Messrs. Clarke, Blake & Liljeqvist,* with oral arguments by *Mr. Francis H. Clarke* and *Mr. J. M. Blake.*

Mr. Justice Eakin delivered the opinion of the court.

At the trial plaintiff offered in evidence the decree of the United States District Court for the District of Oregon, above referred to, for the purpose of showing that the receiver was discharged, and that plaintiff's cause of action against the receiver was continued against defendant company. It was competent, for this purpose,

but objection was made to a portion thereof, relating to matters that were stricken out of the complaint. There is nothing in the record to show what was stricken out of the complaint, or what portion of the decree was objected to, and therefore there is nothing for us to consider, and, if there is anything stated in the decree that might have been prejudicial to the defendant's case, its effect should have been limited by proper instructions.

There are several assignments of error based on the admission of evidence as to the relative duties of the head brakeman and the rear brakeman, and as to whether it was negligence for plaintiff to attend to this switch, which ordinarily was the duty. of the head brakeman. Plaintiff testified that Thomas was first brakeman and plaintiff second; that he is supposed to ride upon the rear end of the train, while the first brakeman is supposed to ride on the front end, but that they worked together generally; that his duties depended on his position. If he was where he could open a switch, he would do it. As to the duties of the second brakeman, he says:

"Well, it was just owing to what we were working at. If we happened to be in a place it was convenient for the second brakeman to be on the engine, he would be there, and, if convenient for the other brakeman to be at the rear of the train, he would be there. * * A person would be wherever it was necessary for him to be."

There is nothing in the evidence indicating that the duties of the second brakeman were limited to any part of the train, or that the work of the first and second brakeman was so divided that it would be a violation of the rules or negligence for either of them to perform any duty of the other. At least, it is evident that plaintiff had no knowledge of such a distinction.

1. Whether it was negligence for plaintiff to ride on the step of the tender from Beaver Hill Junction over the trestle is immaterial, as he was not injured in going over the trestle or by reason of riding on the step. The

question is whether it was negligence to be on that step when he approached the switch. This cannot as a matter of law be said to be contributory negligence. Albert Abbott, defendant's train manager, testified in reference thereto:

"Q. How do they (the brakemen when the engine is backing up) go from the tender to the ground to turn the switch?

"A. Generally go down the steps at the back part of the tender. That is what it is for, to get on and off there."

Another witness says that on that step was the proper place for him when getting in readiness to turn a switch. This was the only act of contributory negligence alleged, and whether it was negligence was properly left to the jury.

2. It is apparent from plaintiff's own testimony that he knew the Klondyke switch was open, and he was acting upon that knowledge when injured. He says he took the position on the step of the tender "for the purpose of throwing this switch on the trestle" (meaning the Klondyke spur switch).

"I had an awfully good idea that it was open. * * It was reasonable to believe that the switch was left open after we pulled out with the double-header. * * It has always been the custom to never stop and line up the switch. * * I had some recollection of this switch being left open for the simple reason that we pulled out of there. * * That was one reason. Another reason was because these empties were left on the main line. I asked orders about putting them on this spur, and that was the case, and having pulled out of there it would be reasonable to suppose that it was left open."

And the other trainmen testify that a heavy train going out of that switch always left it open, and that the train returning was expected to stop and close it, so that plaintiff was undoubtedly acting upon the knowledge that this switch was open. Therefore the open switch alone

was not actionable negligence on the part of defendant, but the loaded car left on the spur increased the danger, and, if plaintiff was ignorant of its presence, a question for the jury would arise as to whether, under the circumstances, it was negligence for the company to so leave the car, and whether that was the approximate cause of the injury.

3. The negligence of defendant upon which plaintiff relies is that it left a loaded car upon the Klondyke spur and the switch open when the train pulled out, and that this was negligence, causing the injury. Plaintiff contends that the Beaver Hill branch was a main line and the Klondyke branch only a spur, and that the switch should have been kept closed in favor of the Beaver Hill line. The rule that all switches should be closed to the main line is for the protection of the public. But operatives running logging trains equally over two branches of a road, diverging from the same switch, it being usual to leave the switch open as the last train passed over it, cannot claim the benefit of that rule. If in such a case the switch was left open as the train passed out, such being the usual manner of operating these branches, and a disabled car was left on that branch, it is a question for the jury whether the defendant company is chargeable with negligence for an injury resulting to one of the operatives of such train by reason thereof. Plaintiff as one of such operatives knew his train was to be the first to pass the switch, that the switch was open, and that the train should stop and close it to take the other branch, but contends that he did not know that the loaded car had been left there. So far as relates to the use of these two branches by the logging trains, if, as indicated by the business conducted over them and the manner of their use, the switch was left open to the track last used, the operatives so using it cannot charge such use as negligence of the defendant.

4. Instruction No. 14 upon this question is as follows:

"If the jury find as a matter of fact from the evidence in this case that the line of railroad running from Beaver Hill to Beaver Hill Junction was in general use by the company for passengers and freight service, and so offered to the public, and that the line of road running from Pierce's logging camp to Klondyke Junction, and there connecting with said Beaver Hill line, was used exclusively as a logging road, then they must find that the line from Beaver Hill Junction is what would be called a main line track and the line from Pierce's logging camp to Klondyke Junction was a spur connecting with said main line track, and that the two lines were so operated together subject to the rules, regulations, customs, and practices of railroads as to main lines and spur tracks, respectively."

This we think was error. If it were a claim for damages by a passenger injured by reason of the open switch, the instruction might have been proper, but it was error to give it under the facts of this case. It makes the company liable to the plaintiff by reason of an open switch to the same extent as to a passenger, without taking into consideration the conditions under which the roads were actually operated, plaintiff's connections therewith, and knowledge of the conditions. It is a question, considering the manner in which the logging trains were operated, whether the disabled car left on the track was an obstruction as to operatives for which defendant is liable within the rule that the company must use reasonable care in operating its road to prevent obstructions on its track dangerous to its employees.

We think the giving of this instruction was error, prejudicial to defendant's rights, and for which the cause is reversed and remanded.       REVERSED.