Argued March 8, decided April 26; rehearing denied June 14, 1910.

## DOYLE *v.* SOUTHERN PAC. CO.

[108 Pac. 201.]

APPEAL AND ERROR—REVIEW—SCOPE AND EXTENT—RULINGS ON MOTION FOR NONSUIT AND DIRECTED VERDICT.

1. The court, on appeal from the denial of a nonsuit and from the refusal to direct a verdict for defendant, must consider the testimony in the light of inferences most favorable to plaintiff which the jury could give to it.

MASTER AND SERVANT—INJURIES TO SERVANT—PLACE OF EMPLOYMENT.

2. One employed as timekeeper of a crew engaged in improving railroad tracks, and required to constantly watch the men and to move about from place to place, may, in the performance of his duty, go on the track, and need not remain outside the tracks and out of danger of passing trains.

MASTER AND SERVANT — INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

3. Whether the timekeeper of a crew engaged in improving railroad tracks was guilty of contributory negligence in going on a track, instead of the space between the tracks, so as to preclude a recovery for his injuries by a passing engine, *held,* under the evidence, for the jury.

MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

4. Whether a railroad, causing injury to its timekeeper of a crew by running an engine against him, was negligent in running the engine

at an excessive speed and in failing to ring the bell and to keep a proper lookout for servants on and near the track *held,* under the evidence, for the jury.

NEGLIGENCE—"PROXIMATE CAUSE."

5. "Proximate cause" is defined generally as the cause which leads to, or may naturally be expected to produce, the result.

MASTER AND SERVANT — INJURIES TO SERVANT — PROXIMATE CAUSE — QUESTION FOR JURY.

6. Whether the proximate cause of an injury to the timekeeper of a railroad track crew was occasioned by the negligence of the railroad in the operation of its engine, or whether it resulted from the negligence of the timekeeper, *held,* under the evidence, for the jury.

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

7. One employed as timekeeper of a crew engaged in improving railroad tracks may, when on a track in the performance of his duty, assume that servants in charge of engines or trains will properly perform their duties, and will not needlessly or recklessly expose him to danger by the improper movement of trains or engines under their control, and he is not, as a matter of law, guilty of negligence in going on a track in the performance of his duty merely because, had he looked once more, he would have seen an approaching engine in time to have escaped from the track.

MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK— NEGLIGENCE OF FELLOW SERVANT.

8. An employee of a railroad assumes all reasonable risks incident to his employment, but, under the fellow servant act, he does not necessarily assume all risks resulting from the negligence of his co-servants; and, in the event of such negligence, proximately causing an injury, he is entitled to recover.

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

9. The burden of proving contributory negligence of a servant suing for a personal injury is on the master.

NEGLIGENCE—QUESTION FOR JURY.

10. Where, in view of the facts, the question of negligence is one as to which men may honestly differ, the case is for the jury, though the facts are not in dispute, and it is only when the facts are such that all reasonable men must draw the same conclusion that the question of negligence is one of law.

PLEADING—AMENDMENTS—ALLOWANCE—"CAUSE OF ACTION."

11. Where, in an action for injuries to a servant run down by an engine, the complaint alleged that the railroad was negligent in running the engine at an unnecessarily high speed, and in negligently failing to give any signal of the danger or the approach of the engine, the allowance during the trial of an amendment, alleging that the railroad negligently failed to keep a sufficient, or any, lookout for persons on the track, did not change the original cause of action, but merely made the averments of negligence more definite and certain; a "cause of action" being that which produces the necessity for bringing action.

Appeal and Error — Review — Parties Who Can Allege Error — Errors as to Respondent.

12. Where instructions were as favorable to the defeated party as he could expect under the law, the court on his appeal will not determine whether any part of the instructions was erroneous as to the successful party.

Appeal and Error—Review—Questions Reviewable—Findings on Conflicting Affidavits.

13. Where the affidavits on the issue of improper remarks of the counsel of the successful party in his argument to the jury were conflicting, the court on appeal will not disturb the denial of a new trial, on the ground of such improper argument.

Appeal and Error — Review — Questions Reviewable — Amount of Recovery.

14. Damages assessed by the jury in a personal injury action will not be disturbed on appeal.

New Trial—Grounds—Excessive Damages—Remittitur.

15. Where the trial court believed that the damages awarded in a personal injury action were excessive, but that the verdict was not the result of passion or prejudice or undue influence, it could deny a motion for a new trial on the ground of excessive damages, on condition that plaintiff remit all in excess of a specified sum.

Appeal and Error—Review—Questions Reviewable—Refusal to Unconditionally Set Aside Verdict.

16. Error cannot be predicated on the refusal of the trial court to unconditionally set aside a verdict on account of excessive damages.

From Lane: Lawrence T. Harris, Judge.

Statement by Mr. Justice King.

This is an action by M. J. Doyle against the Southern Pacific Company, for $100,000 damages, on account of injuries received while in defendant's employ, through being run down by one of its engines. The grounds upon which recovery is sought appear from the pleadings; the issues framed thereby being set out in the instructions given to the jury by the court. Owing to the lucid and concise manner in which the questions and issues involved are there stated, the instructions (except as to those usually termed "statutory," concerning which no question is presented) are given in full, as follows:

"Gentlemen of the jury, it is made the duty of the court to instruct you as to the rules of law which shall be applied by you in determining the issues, which, under the pleadings, you are to decide. In this proceeding M. J.

Doyle is known as plaintiff, and the Southern Pacific Company is known as defendant.

"The plaintiff has filed his complaint herein, and in his complaint alleges what he says is his ground of action and upon which he bases his claim of recovery; and in the complaint the plaintiff alleges that the defendant is a corporation having an organization and engaged in business in the State of Oregon, and as such corporation was at all times and dates hereinafter mentioned engaged in operating a railroad from the city of Portland in the State of Oregon to the city of San Francisco in the State of California and in commerce between said points. The answer which is filed by the defendant admits the allegations which I have just called your attention to, so that, in deciding this case, you shall take as an admitted fact that the defendant is a corporation having an organization within the State of Oregon, and engaged in, and that it was engaged at the time mentioned in the complaint in, operating a railroad from the city of Portland in the State of Oregon to the city of San Francisco in the State of California. Now the complaint further alleges that on and prior to the 24th day of October, 1906, the plaintiff was in the employ of the defendant at and near the station of Divide, in Lane County, on said railroad line of the defendant as a timekeeper, keeping the time of a number of sectionmen who were at work and engaged in preparing said road for commerce and the carrying of freight and passengers between said states. The defendant in its answer admits that prior to the 24th day of October, 1906, the plaintiff was in the employ of the defendant at and near the station of Divide, in Lane County, on said railroad line of the defendant as timekeeper. The allegation in the answer is that as to this paragraph which I have just read to you, the defendant denies all of the allegations thereof, except the one which I have said the defendant admits, and by reason thereof the defendant denied that on the date mentioned the plaintiff was keeping the time of a number of sectionmen, the date mentioned being the 24th day of October, 1906, who were at work on said road, and engaged in preparing said road for commerce and the carrying of freight and passengers between said states. Now, then, by reason of this allegation which is denied in the answer of defendant, it

is necessary for you to determine, among other questions, whether or not the plaintiff was, on the 24th day of October, 1906, keeping the time of a number of sectionmen who were at work on said road and engaged in preparing said road for commerce and the carrying of freight and passengers between said states.

"The plaintiff further alleges in his complaint that on said 24th day of October, 1906, and while the said plaintiff was engaged in his duties, and was performing the same with all reasonable and ordinary care, the defendant and its employees in charge of and controlling and managing a certain engine operated upon said road and belonging to said defendant, and engaged in said interstate commerce upon said road, so carelessly and negligently run down upon the side track upon which the plaintiff was standing in the performance of his duties and in the exercise of ordinary care, at a dangerous, unsafe, and unnecessarily high rate of speed, and carelessly and negligently failed to give the plaintiff or the other men employed in the vicinity any signal or warning of the danger of the approach of said engine, and negligently failed and neglected to keep a sufficient or any lookout for persons upon the track, and especially for this plaintiff and other employees likely to be upon the track. The defendant, as to this allegation to which I have called your attention, denies every allegation contained therein, except that the plaintiff was run over by one of the defendant's engines, as a result of which the plaintiff suffered an injury.

"Now, the plaintiff further alleges in his complaint that, by reason of the alleged negligence of the defendant and without any fault upon the part of plaintiff, the engine struck the plaintiff when he was so in the performance of his duties, without any warning or notice, whereby he was thrown to the ground and bruised and mangled, and his limbs were crushed and broken, and that it was necessary to have both legs amputated above the knees, whereby the plaintiff lost his legs and feet, and was and will be crippled for all time, and incapacitated from his business and avocation as timekeeper and from carrying on any business requiring physical labor, and whereby he has suffered great pain and agony and discomfort and whereby he will continue to suffer great pain and

agony and discomfort during his entire life, and whereby he has been and will be prevented from enjoying the ordinary pleasures of life, and especially those pleasures and pursuits requiring the use of his feet and legs, and will be unable to care for himself, and will be compelled to employ some one to minister to and take care of him during the rest of his life. As to this further allegation to which I have last called your attention, the defendant denies each and every part thereof, except that the defendant admits that on October 24, 1906, plaintiff was run over by one of defendant's engines, as a result of which plaintiff sustained injuries to both of his legs resulting in their amputation. Therefore, in determining the issues to be tried in this case, you are to take as an admitted fact that one of the engines of the defendant ran over the plaintiff, and by reason thereof the plaintiff sustained injuries to both of his legs, resulting in their amputation. Up to this point and by reason of the allegations contained in the complaint, and the denials contained in the answer, the principal issue for you to determine is whether there was or was not negligence upon the part of the defendant. The alleged negligence upon the part of the defendant being his negligence alleged in the complaint, namely, that the defendant so carelessly and negligently operated said engine as to carelessly and negligently run down upon the side track upon which the plaintiff was standing in the performance of his duties and in the exercise of ordinary care, at a dangerous, unsafe, and unnecessarily high rate of speed, and carelessly and negligently failed to give the plaintiff or the other men employed in the vicinity any signal or warning of the danger or the approach of the said engine.

"It is further alleged in the complaint that the plaintiff was damaged in the sum of $100,000. This allegation is denied by the answer; and, in addition to the issue to which I have called your attention, it is, of course, one of the issues to be tried. Now, in addition to the denials contained in the answer, and in addition to the admissions contained in the answer which I have called your attention to, the defendant set up what is termed in the answer a further and separate defense, and alleges that on October 24, 1906, while the defendant was running one of its helper engines on a side track at Divide,

Oregon, said engine being then and there carefully run and operated, after the whistle on said engine had been sounded, and while the bell on said engine was being rung continuously, and said engine was moving at a moderate and reasonably safe rate of speed, the plaintiff herein, notwithstanding what he heard, and by the exercise of ordinary care and diligence should and could have heard said whistle and said bell, and notwithstanding he saw and heard, and by the exercise of ordinary care and diligence should have and could have seen and heard, said engine approaching in ample time to avoid said accident, suddenly, carelessly, negligently, and recklessly stepped onto and stood on said side track closely in front of said approaching engine, without giving to defendant or any one any notice or warning or opportunity to know of his presence, so that he was thereby struck by said engine without negligence on defendant's part, and was then and there knocked down by said engine and received the injuries to his legs complained of; that said injuries were received solely because of plaintiff's own negligence and want of care as aforesaid. To this further and separate answer of the defendant the plaintiff files another paper herein, which is designated as a reply. And in the reply of the plaintiff all of the further and separate matter constituting the further and separate defense, which I have called your attention to, is denied by the plaintiff, except that the plaintiff admits in his reply that the plaintiff was struck and knocked down by the engine of the defendant and received the injuries to his legs complained of. Now, by reason of the allegations contained in the further and separate answer and defense of the answer, and the denials thereto contained in the reply, an issue is raised which you are required to try, and that issue is the one as to whether or not the plaintiff was guilty of contributory negligence.

"Concisely speaking, the main issues and principal issues which you have to determine are: First, whether there was or was not negligence in the particulars alleged in the complaint upon the part of the defendant. If there was negligence upon the part of defendant in the particulars, or some of the particulars, named in the complaint, then whether there was or was not contributory negligence upon the part of the plaintiff. But if there was

negligence upon the part of the defendant, and was not contributory negligence upon the part of the plaintiff, then the next issue for you to determine is the amount of damages to which the plaintiff would be entitled, if any. I shall instruct you, gentlemen of the jury, more in particular, first, as to the issue of the alleged negligence upon the part of the defendant; and then more fully as to the alleged negligence upon the part of plaintiff, alleged by defendant as constituting contributory negligence; and then more fully as to the elements which you can take into consideration in estimating the amount of damages to be awarded to the plaintiff, if you find that the plaintiff is entitled to any damages. The only negligence charged in the complaint is that the defendant by its employees in charge of and operating and managing this helper engine carelessly and negligently ran the engine upon the side track upon which the plaintiff was in the performance of his duty, at a dangerous, unsafe, and unnecessarily high rate of speed, and carelessly and negligently failed to give plaintiff any signal or warning of the danger of the approaching engine, and carelessly and negligently failed to keep a sufficient or any lookout for plaintiff or other employees likely to be upon the track. It is not enough to entitle the plaintiff to recover merely to show the injury or the accident, and that he received injury while in the employ of the defendant, but he must go further and prove, by a preponderance of the evidence, that the defendant was negligent as charged in the complaint, and that this negligence, if any, caused the plaintiff's injury. Proof of an accident and resulting injury is not sufficient proof to entitle plaintiff to recover. As I have stated, the mere fact that the plaintiff was injured, and that the defendant's engine caused the injury, does not entitle plaintiff to recover. The right to recover in this case, if it exists at all, is based upon the alleged negligence of the defendant in one or more particulars named in the complaint, which particulars are, as I have already charged you, that defendant negligently ran said helper engine upon the side track upon which plaintiff was in the performance of his duty, at a dangerous, unsafe, and unnecessarily high rate of speed, and carelessly and negligently failed to give plaintiff any signal or warning of the danger of the

approach of the engine, and carelessly and negligently failed to keep a sufficient or any lookout for plaintiff and other employees likely to be upon the track; and, if it appears from the testimony that plaintiff was injured, and that this engine caused the injury, yet that the injury was without the fault or negligence of the defendant, and while the. defendant was exercising ordinary care and prudence in the operation and movement of its engines, then the defendant would be entitled to a verdict. It was the duty of the defendant to exercise ordinary and reasonable care in moving the helper engine on the side track, so as to avoid injury to its employees, and to the plaintiff, if he was an employee at that time engaged in the performance of his duty. That its duty to exercise ordinary and reasonable care in moving said helper engine is such care as an ordinarily prudent person would and should use under the circumstances, and. whether or not such care was or was not used in this particular case is a question of fact for you to determine.

"If you find by a preponderance of the evidence that the defendant ran such helper engine down the side track at a dangerous, unsafe, and unnecessarily high rate of speed and that an ordinarily prudent person engaged in such business would not have so run said engine, and that by reason of such speed of said engine the plaintiff, without contributory negligence on his part, was injured, then plaintiff would be entitled to a verdict. If you find by a preponderance of the evidence that the defendant ran said helper engine down the side track, and did not ring the bell of the engine, sound the engine whistle, and if you further find that an ordinarily prudent person engaged in said business would have rung said bell or sounded said whistle, and that plaintiff, without contributory negligence upon his part, was injured because of the failure to ring said bell and sound said whistle, then your verdict should be for the plaintiff. If you find by preponderance of the evidence that the defendant ran said helper engine down said side track, and the men operating said helper engine failed to keep such lookout as an ordinarily prudent person engaging in such business would have kept, and that the plaintiff was injured because said men in said engine failed to keep such a lookout as an ordinarily prudent man would have kept under such circum-

stances, and that the plaintiff is not chargeable with contributory negligence, then your verdict should be for the plaintiff.

"The burden of proof to show negligence upon the part of the defendant rests upon the plaintiff; and the plaintiff, before he is entitled to a verdict, must show, by a preponderance of the evidence, that the injury resulted from the engine being run at a rate of speed higher than an ordinarily prudent person engaged in such business would have run said engine, and that said injury resulted from failure of the men operating said engine to give such signals or signal as an ordinarily prudent person engaged in such business would have given, or that the injury resulted from the failure of the men in the engine to keep such a lookout as an ordinarily prudent person engaged in such business would have kept. But if the plaintiff fails to prove by a preponderance of evidence that said injury resulted from the engine being run at a rate of speed higher than an ordinarily prudent person engaged in such business would have run such an engine, and also fails to prove by a preponderance of the evidence that the injury resulted from the failure to sound the engine whistle and ring the engine bell, such as an ordinarily prudent person engaged in such business would have done, and also fails to prove by a preponderance of the evidence that the injury resulted from the failure of the men operating the engine to keep such lookout as an ordinarily prudent person engaged in such business would have kept, then your verdict will be for the defendant. I instruct you that the defendant had a right to move its engine on this passing track in the way and manner in which ordinarily prudent persons, under the circumstances, engaged in that business would have moved the same, and that its employees in charge of the engine could move the same at a reasonable rate of speed, such as ordinarily prudent persons, engaged in that business, under the circumstances, would have moved the same. There was no speed limit at which this engine was required to be moved at that place, and it would not be negligence upon the part of the company or its employees to move that engine at that point on that side track at a high rate of speed, if the employees and other persons who might be in the vicinity could, by the exercise of

ordinary care, have seen or discovered the movement of such an engine in time to avoid being injured by being on the track. Even if the fireman or engineer had seen Doyle standing on the track, they would have the right to assume that he would exercise the prudence and care of an ordinarily prudent person in avoiding accident or injury. The fireman or engineer was not bound to maintain a constant lookout toward the plaintiff, or any person who might have been on the track, or constantly to look at a point within any particular distance in front of this backing engine.

"In passing upon the question of whether or not there was negligence in the operation of said helper engine in the matter of speed, in the matter of giving signals and in the matter of keeping a lookout, and in determining whether there was neglect in these or any of these particulars, you have a right to consider the place where the injury occurred, the curvature of the road, the obstruction of the view, if any, the distance which could be seen upon the track, the men, and what they were engaged in along the track, and all other circumstances which surround the case and aid you in reaching a conclusion as to whether or not the manner in which the engine was operated, so far as it pertains to speed, signals, and lookout, was reasonably and ordinarily prudent under the circumstances. It is alleged by the defendant that the plaintiff was himself guilty of contributory negligence, and upon that question I charge you that the burden of proof is upon the defendant; and, if you are in doubt, and the evidence is evenly balanced upon that question, you should find for the plaintiff thereon; that is, the plaintiff is not obliged to show that he was without contributory negligence, but it must appear from the evidence, and by a preponderance thereof, that the plaintiff was guilty of contributory negligence, to become available as a defense. If you find by a preponderance of the evidence that the plaintiff heard, or by the exercise of ordinary care and diligence should or could have heard, the whistle or bell, if sounded, you should find that plaintiff saw or heard, or by the exercise of ordinary care and diligence should or could have seen or heard, said engine approaching in ample time to avoid said accident, and stepped onto or stood on said track, and by reason thereof

sustained the injury, then the plaintiff was guilty of contributory negligence, and the defendant would be entitled to a verdict. A railroad track is a place of danger, and the plaintiff, as a trackman employed to work at the place was bound to know and anticipate that a train or engine might come at any time, and it was his duty to keep a careful lookout for the approach of any engine or train in either direction; if he got on the track between the rails when it was negligence for him so to do, and was thereby run over, he took the risk, and your verdict under those circumstances, if you so find, should be for the defendant. I instruct you that one who is working in a place of danger, where he is exposed to danger, must exercise his faculties for his own protection, and if he fails to do so, and his failure is the cause of the injury, he cannot recover therefor.

"I instruct you, further, that walking or standing upon a railroad track when trains or· engines are at any time liable to pass, without looking or listening to see whether a train is approaching, is negligence which will prevent a recovery for any injury received by being run over by the engine. If the plaintiff was injured by reason of his own carelessness or negligence, he cannot recover, although, you may find that his negligence may have been slight, and although you may find that the defendant may also have been negligent. If you find from the evidence that the plaintiff himself was careless or negligent at the time and place of the accident, and that this carelessness or negligence upon his part caused or contributed to his injury, then I instruct you that the plaintiff cannot recover, even though you may find that the defendant was also negligent. It was the duty of .the plaintiff, as an ordinarily prudent person in going upon the track, to keep careful watch for the approach of any engine or train upon this track in either direction, and if he went upon the track and failed to look behind him, or to listen carefully for the approach of an engine or train which might be coming in his direction, and because of his failure to look or listen, or because he looked or listened carelessly or negligently, he did not discover the engine in time to avoid the accident, and he was thereby run over, he would not be entitled to recover. I instruct you that, if you find from the evidence that the defendant by its

servants and agents in charge of this engine gave the usual and ordinary warning of its aproach on the side track at and immediately before the accident, by either sounding its whistle in the usual and ordinary manner at a reasonable distance from the plaintiff, or by ringing the bell, so that if the plaintiff had been in the exercise of ordinary care he could and should have heard such whistle or ringing of the bell and discovered the approach of said engine in time to avoid the accident, then the plaintiff is not entitled to recover, and your verdict should, in that event, be for the defendant. It is a question of fact for you to determine whether the plaintiff was guilty of negligent conduct which contributed to the injury. In determining whether the plaintiff was guilty of contributory negligence you have the right to take into consideration the employment of plaintiff, the duties of his employment, the business in which he was engaged, if any, at the time of the accident, the relative positions of the main and side tracks, the distance between the tracks, the nature of the ground next to the side of the track, the curvature of the track, if any, the train on the main track, and all the circumstances, whatever you find the circumstances to be; and if, under all the circumstances, you find that the plaintiff acted as an ordinarily reasonably prudent man would have acted, then he would not be guilty of contributory negligence; if you find that the plaintiff did not, under all the circumstances, act as an ordinarily prudent and careful man would have acted, then he must be deemed guilty of contributory negligence.

"In considering the case and arriving at a verdict it is your duty not to allow yourselves to be influenced or controlled by any consideration of feeling, passion, prejudice, or sympathy for or against either of the parties to the cause, nor will you be influenced or controlled by the fact that the defendant is a railroad corporation. It is your duty, and you are required under the law to try this case upon the law and the evidence as submitted to you here, and to try this case the same as if the parties to this suit were individuals. If you find that the plaintiff is entitled to a verdict, it will then be your duty to assess the damages the plaintiff has sustained by reason of the injury, and you have the right, when assessing the damages, to take into consideration the bodily pain and suffer-

ing the plaintiff has already undergone and will hereafter suffer on account of the injuries received, also the loss of power to perform labor and duties which he would be called upon to perform in his condition of life, and the impairment of his capacity to earn money, and the bodily and mental suffering to which the plaintiff will be subjected on account of the deformity occasioned by the loss of his limbs; and if, after considering all of these elements of damages, you conclude that the plaintiff is entitled to recover, it is your duty to determine the sum that, in your judgment, will compensate plaintiff for injuries he received, not exceeding the amount asked for in the complaint. You are the exclusive judges of the credibility of the witnesses testifying in this case, and it is for you exclusively to determine the facts which are to be decided in this case. * * Last Thursday you were taken to view the scene of the injury to the plaintiff. That was done for the purpose of enabling you to understand better and more clearly, if possible, the evidence that might be adduced here at the trial by witnesses testifying upon the witness stand; and, in determining the issues which are to be tried by you, you should so take and consider the evidence which has been offered here in the trial of this cause. * *"

A verdict was returned in plaintiff's favor for the sum of $45,000, which was followed by a motion for a new trial, based upon various alleged errors occurring at the trial, prominent among which was "excessive damages, appearing to have been given under the influence of passion and prejudice." The motion was denied, on condition that plaintiff remit $10,000 of the judgment, and file such remittitur within twenty days. To this plaintiff assented, leaving a judgment in his favor for $35,000. Defendant appeals, assigning numerous errors, which will be considered in their logical order.          Affirmed.

For appellant there was a brief over the names of *Mr. William D. Fenton, Mr. Rufus A. Leiter* and *Mr. John M. Pipes,* with an oral argument by *Mr. Fenton.*

For respondent there was a brief over the names of *Mr. Absalom C. Woodcock, Messrs. Sinnott & Adams* and

*Messrs. Bennett & Sinnott,* with oral arguments by *Mr. Roger B. Sinnott* and *Mr. Alfred S. Bennett.*

MR. JUSTICE KING delivered the opinion of the court.

1. At the close of the testimony offered on behalf of plaintiff, defendant filed a motion for a nonsuit, alleging, as grounds therefor, that plaintiff had not proved a cause sufficient to be submitted to the jury, and that there was no evidence of any negligence on the part of the defendant, but that plaintiff was guilty of negligence contributing thereby to the cause of the injury, which motion was denied by the court. This was followed by the introduction of testimony on the part of defendant, and at the close of all testimony offered at the trial counsel for defendant renewed their motion for a nonsuit, and in addition thereto interposed a motion for a directed verdict in defendant's favor, based upon substantially the same grounds, both of which were overruled. This presents the question as to whether, taking the evidence as a whole, sufficient facts were proved to entitle the cause to be submitted to the jury. The testimony, together with the admitted facts bearing upon the points raised by the motion, when viewed in the light of inferences most favorable to plaintiff which the jury was entitled to give it (*Kunz* v. *Oregon R. R. & N. Co.,* 51 Or. 191, 205: 93 Pac. 141: 94 Pac. 504), established the following facts:

2. Plaintiff, at the time of the accident, was 34 years old, in good health, and for 23 days had been and was in the employ of the defendant as "timekeeper, and as a general man around, going for orders, and writing the amount of work done through the day, class of work," etc. It also appears to have been his duty, as assistant to the person in charge, to see that the men kept at work. Until he entered defendant's employ his experience, in connection with railways, was limited to that of conductor on

one of the electric lines in Chicago.   At the time of the casualty he had worked about three days in the immediate vicinity thereof as timekeeper, etc., of a "gang" of 40 men, being at a place called "Divide," on the boundary line between Douglas and Lane counties.   At this point there was sidetracks covering a distance of a half-mile or more, used for the purpose of facilitating the operation and passage of trains running between Portland and San Francisco, near the south end of which was a turntable.   The men were at various places along the tracks in a southerly direction from the main switch for a distance of about 1,100 feet, and, by the aid of what is termed "push cars," were distributing gravel along and between the tracks and rails, pushing the gravel under the ties, and doing various other kinds of work connected with the improvement of the tracks.   It was essential to the accuracy of "timekeeping" that plaintiff frequently count the men to ascertain if any were missing, requiring a constant watch over the employees, who by reason of their occupation were continuously moving from place to place, making it incumbent upon plaintiff, while thus engaged, to move on and about the tracks.

Plaintiff went to work about 7 o'clock on the morning of the 24th, at which time a freight train arrived from the direction of San Francisco.   This train was drawn by two engines, one of which was what is known as a "helper," and stopped for the purpose of leaving the "helper" at that place.   The helper engine was uncoupled and moved onto the sidetrack.   The train then proceeded northerly towards Portland, while at the same time the helper engine, for the purpose of being reversed, moved southerly in the direction of the turntable.   Plaintiff at the time had not noticed the extra engine, and, having no knowledge of its being left there, or of its being on the sidetrack, stepped upon the sidetrack and proceeded to walk southerly thereon, but before so doing looked in

each direction, at which time he could not see the engine; the track being clear.   Owing to the slight curvature in the track and the moving train, his vision in the direction from which the engine came was limited to a distance of about 200 feet.   In this connection plaintiff, on cross-examination, further testified:

Q.   "Why didn't you turn around and look?"
A.   "I could see the way I did."
Q.   "Could you see all the way up to the switch?"
A.   "Not when the freight was there."
Q.   "How far up could you see?"
A.   "There was a curve there."
Q.   "How far could you see?"
A.   "I don't know the exact distance."
Q.   "You could see 200 feet, couldn't you?"
A.   "Perhaps."
Q.   "Don't you know that you could?"
A.   "Not the exact feet I don't."
Q.   "Could you see when you turned your head sidewise?"
A.   "I turned partly around.   Partly my head and partly my body."
Q.   "Did you turn your body?"
A.   "I don't know exactly.   I turned enough to know there was nothing coming."
Q.   "When you looked, Mr. Doyle, whenever you did look, there was no engine in sight?"
A.   "No, sir."
Q.   "What made you look?"
A.   "I was looking around.   I was always taking precautions, looking around.   I looked around."
Q.   "You didn't expect the engine to come down the track?   You never heard of one coming down before?"
A.   "No, sir."
Q.   "Well, what made you look?"
A.   "That is, only I looked around, everywhere."

3. The space between and on the outside of the tracks at that time was in such condition that he could not well have walked there, leaving the track, on which he was

run over, the only reasonably convenient place in which to be while in performance of the duties devolving upon him. The train on the main track had started toward Portland; its arrival and presence had disconcerted his count of the men by scattering them, leaving them on different sides of and at various points along the tracks, and it was for the purpose of resuming his count and general lookout for the employees that plaintiff was proceeding upon the track in the vicinity of and among the men. In his three or four days' service at that place, plaintiff had seen no "helper" engine on the switch, and as before stated, did not know one was to be run upon it at that time. Before starting to walk down the sidetrack he looked to see if any trains were coming in either direction, and after looking around "everywhere" a time or two, as he was in the habit of doing, to see if any train was in sight, but seeing none, and after walking a few steps, the helper engine, moving at the rate of between 20 and 40 miles an hour, without those in charge seeing any one upon the track, and without ringing the bell or otherwise giving any alarm, backed down the sidetrack in the direction in which plaintiff was moving, running over him and injuring him in such a manner as to require the amputation of both his legs above the knees and near the hips.

It is ably argued by defendant's counsel that, notwithstanding the testimony tends to establish the facts above stated, plaintiff is not, as a matter of law, entitled to recover. In this connection it is maintained, among other things, that plaintiff at the time of receiving the injury was not where his employment called him, that he should have been on the side of one of the tracks, or between the tracks, out of the way of danger, and that, the accident having occurred on a sidetrack at a country siding, negligence on the part of the company cannot be predicated upon the rate of speed at which the engine was moving, or of the failure to provide or keep a sufficient

lookout, or to give any signal of its approach. This position, however, is fully met and decided adversely to defendant's contention in *Rush* v. *Oregon W. P. Co.*, 51 Or. 519, 526 (95 Pac. 193.) In that case it was urged that the plaintiff therein could have avoided the accident by being on the other side of the train; the work there, as here, required the exercise of judgment and discretion, and it was held a question for the jury to say whether defendant was negligent in selecting the side of the train, the exercise of which choice occasioned the injury.

In the outset of defendant's main contention it will be noted that when the accident occurred the engine was backing down upon the sidetrack, not upon the main line, and that plaintiff was not in any sense a trespasser, but was working at the time and place where his duties called him. Each of these features have an important bearing on whether defendant was negligent, and the degree of care required of each of the parties hereto. As to whether plaintiff, in walking where he did, acted as a reasonable, prudent, and industrious man, engaged in the faithful performance of his duties, should have done, and whether the acts complained of constituted negligence on the part of the defendant, such as the rate of speed, failure to ring the bell, and lack of diligence in providing for and keeping a proper lookout for and on behalf of employees on and in the vicinity of the track, we think was for the jury to determine. The principles covering the questions thus presented were fully considered and determined to the above effect in the following decisions, and authorities collated therein. *Rush* v. *Oregon W. P. Co.*, 51 Or. 519, 526 (95 Pac. 193) ; *Hill* v. *Saugested*, 53 Or. 178, 184 (98 Pac. 524) ; *Russell* v. *Oregon R. & N. Co.*, 54 Or. 128 (102 Pac. 619) ; *Abel* v. *Coos B. R. & E. R. & N. Co.*, 54 Or. 188, 192 (102 Pac. 796) ; *Bigelow* v. *Columbia Gold Min. Co.*, 54 Or. 452, 458 (103 Pac. 56) ; *Laury* v. *Northern Pac. Ter. Co.*, 55 Or. 244 (105 Pac. 881) ; *Norwich Ins. Co.* v. *Oregon R. R. Co.*, 46 Or. 123, 132 (78 Pac. 1025).

Sig. 17

4. Owing to the large number of men, and dangers incident to frequent switching of trains among them, as claimed by defendant, and in view of the fact that it was often necessary to back the engine over the tracks, by reason of which the tender obstructed the view of the engineer and fireman in charge, the question whether an outlook should not temporarily have been maintained by some one upon the tender of the engine or elsewhere in the immediate vicinity of the employees, for the purpose of avoiding accidents, for the few days the gang of men was working there, was for the jury, and comes within the principles enunciated on this subject in *Laury* v, *Northern Pac. Ter. Co., Russell* v. *Oregon R. R. & N. Co.,* above cited, and *Schleiger* v. *Northern Pac. Ter. Co.,* 43 Or. 4 (72 Pac. 324.)

5. This brings us to a consideration of plaintiff's averred negligence. The question to be determined in that connection is whether the proximate cause of the injury was occasioned by defendant's negligence, or whether it resulted from the negligence of plaintiff. "The proximate cause," says Mr. Buswell, in his work on Personal Injuries (2 ed) Section 97, "is to be defined generally as the cause which leads to, or might naturally be expected to produce, the result."

6. The evidence tends to show that defendant was running between 20 and 40 miles an hour, and the jury could, under the statements of the various witnesses on the subject, have found the speed to be the maximum stated. It further appears that the bell was not rung, nor the whistle sounded, indicating that the plaintiff was not observed upon the track, and disclosing the necessity of defendant providing for a special lookout in such circumstances. Plaintiff's vision down the track, in the direction from which the engine came, was limited to about 200 feet. But a few seconds elapsed after plaintiff looked in that direction until he was struck. The engine's usual

speed under such circumstances, as testified to by witnesses for the defense, was from five to eight miles an hour. Taking the maximum speed allowed when switching on sidetracks, as in this instance, and in view of the number of men scattered along and in the vicinity thereof, this maximum would seem a reasonable limit. The time required to run 200 feet at such a rate would be approximately 17 seconds, or if going 40 miles an hour, between three and four seconds. Had the time been 17 seconds, it is probable that defendant, under the showing made, would have looked at least once, if not oftener, during that interval, and accordingly would have noticed the engine approaching, and thereby escaped injury. But with the high speed testified to, in order to have been reasonably safe, he would have been required to look every two or three seconds, making it necessary for him to stop work during the switching and passing of trains in that vicinity, and his usefulness thereby proportionately impaired. If 40 miles an hour under such circumstances, or even half that rate, were reasonable, then it might have been negligence in plaintiff not to have ceased work, but, as indicated, such rate was not within the rules or custom of defendant.

7. Plaintiff, presumably, was desirous of retaining the good will of his employers, fulfilling without unnecessary interruption the duties assigned to him; and therefore, while working there and in that vicinity, entitled to be upon the track, with his safety provided for. Defendant's engine was where it had a right to be, and plaintiff was where his duty called him, and he had a right to assume that defendant's employees in charge of the engine or trains would properly perform the duties resting upon them, and not needlessly or recklessly expose him to danger by the improper movement of cars or engines in their charge, or under their control. *Sorenson* v. *Oregon W. P. Co.*, 47 Or. 24, 32 (82 Pac. 10.)

8. An employee of a railway company assumes all reasonable risks incident to his employment, but since the adoption of the fellow-servant act, *upheld in the last case cited,* he does not necessarily assume all risks resulting from the negligence of his co-employees; and, in the event of such negligence, if the proximate cause of an injury occasioned thereby, he is entitled to recover.

9. The burden of proving contributory negligence was on the defendant (*Jackson* v. *Sumpter Valley Ry. Co.,* 50 Or. 455, 458: 93 Pac. 356), and as held in *Elliff* v. *Oregon R. & N. Co.,* 53 Or. 66, 76 (99 Pac. 76), whether the injury to the plaintiff would have happened but for the negligence of the defendant in failing to keep a proper lookout for, or to warn him, or on account of the recklessness of its agents, or whether it was due to the plaintiff's neglect, is, under the most favorable view to the defendant, problematical, "and in cases of doubt as to which of several probable causes produced a hurt, the case should be submitted to the jury for their determination of the question."

10. The true test as to whether a case should be taken from the jury is often said to be whether, if the jury should find for the defendant, it would be incumbent upon the trial court to set the judgment aside and grant a new trial. While this is the usual way of expressing the rule, it means but little, for the same test must be applied in each instance, and this test is as stated in *McLeod* v. *Chicago & N. W. Ry. Co.,* 104 Iowa, 140, 142 (73 N. W. 615), in which it is said:

"It is also well settled that when, in view of all of the facts and circumstances, the question of negligence is one as to which men may honestly differ, the case is one for the jury; and this is true also when the facts are not in dispute. It is only when the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence becomes a question of law for the determination of the court."

JUNE, 1910]     DOYLE *v.* SOUTHERN PAC. CO.          517

Also, *Hedin* v. *Railway Co.*, 26 Or. 155, 161 (37 Pac. 540) ; *Hecker* v. *Oregon Ry. Co.*, 40 Or. 6 (66 Pac. 270) ; *Palmer* v. *Portland Ry. L. & P. Co.*, 56 Or. 262 (108 Pac. 211) ; *Donahoe* v. *Portland Ry. Co.*, 56 Or. 58 (107 Pac. 964) ; *Railway Co.* v. *Ives*, 144 U. S. 417 (12 Sup. Ct. 679 : 36 L. Ed. 485) ; *Railroad Co.* v. *Powers*, 149 U. S. 45 (13 Sup. Ct. 748 : 37 L. Ed. 642) ; *Stewart* v. *Sixth Ave. R. Co.* (C. C.) 45 Fed. 21; *Boston & M. R. Co.* v. *McDuffey*, 79 Fed. 934, 940 (25 C. C. A. 247) ; *Illinois Cent. Ry. Co.* v. *Jones*, 95 Fed. 370, 387 (37 C. C. A. 106.) Plaintiff may, in fact, have been negligent, and the jury might have so found, but under the circumstances disclosed it cannot be imputed to him as a matter of law merely because had he looked once more he would have seen the engine approaching; for the proper performance of his duties at that particular time may have directed his attention elsewhere (*Gentzkow* v. *Portland Ry. Co.*, 54 Or. 114, 124:102 Pac. 614), and "in determining whether an employee has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed, to all the circumstances of the particular occasion." *Kane* v. *Northern Central Ry.*, 128 U. S. 95 (9 Sup. Ct. 16 : 32 L. Ed. 339.)

A large number of authorities are cited in support of defendant's position, but an examination thereof discloses that, owing to the difference in the circumstances surrounding the accident in each instance, but few are in point. To illustrate, in the case of *Cogswell* v. *Oregon & C. R. R. Co.*, 6 Or. 417, 425, deafness was held to have been the primary cause of the accident; *McBride* v. *Northern Pac. R. R. Co.*, 19 Or. 64 (23 Pac. 814), is to the effect that one, before crossing a track, must look and listen, and is not analogous to the case at bar, either in facts or complications presented; *Smith* v. *City Ry. Co.*, 29 Or. 542 (46 Pac. 780), is cited as holding that negligence is presumed.

This case, however, does not go to that length; it merely holds on this point that, from a state of facts established, negligence could be inferred or be presumed, thus manifestly not in point. In *Brunell* v. *Southern Pac. Co.*, 34 Or. 256 (56 Pac. 129), the accident occurred through the negligence of the plaintiff, coupled with the gross negligence of a fellow servant, for whose acts defendant, under the law then in force, was not liable. *Hecker* v. *Oregon R. R. Co.*, 40 Or. 6 (66 Pac. 270), so far as it has any application to the questions here involved, is against defendant's contention. The great majority of the cases cited from other states are where the accidents occurred at crossings, or where the party injured was a trespasser, or strangers traveling along, or on the track for their own convenience, or instances where the party injured was in no way connected with the defendant, and had no occasion to be upon the railway track; and there is a vast difference between cases of that class and the one under consideration. The same strictness to look and listen is not required of railway employees upon and working along a railroad track as is demanded of persons crossing the railway, or those upon the track as trespassers, and not in the railway's employ. As said by Mr. Chief Justice KINNE, in referring to the plaintiff in *McLeod* v. *Chicago & N. W. Ry. Co.*, 104 Iowa, 140, 144 (73 N. W. 615) :

"Had he been a mere trespasser or a stranger to the defendant, passing along the track in a place of danger for his own convenience, there can be no doubt that his failure to look would, under such circumstances preclude his recovery. But the same rule does not obtain as to an employee who is engaged in the discharge of his duty; that is, it cannot be said that an employee, passing along the side of the track in the performance of a duty enjoined upon him, is in duty bound to look and listen for an approaching engine or train to the same extent, or with the diligence of a traveler at a crossing."

And in discussing the facts in that case, which in part are analogous to those presented here, it is also observed:

"Can it be said that honest men, considering all of the evidence fairly, would reach but one conclusion, and that, that defendant was not negligent, or, if it was, that plaintiff was guilty of contributory negligence? It occurs to us that there was much evidence tending to establish the defendant's negligence. It was, as the evidence shows, the duty of the employees operating the switch engine to be on the lookout for employees on or near the tracks, and to warn them of the approach of the engine by ringing the bell, blowing the whistle, or in some other manner to notify them of its approach. The bell was not rung, nor the whistle sounded, nor was the plaintiff in any way warned of the approach of the engine. In view of this and other evidence, it cannot be said that honest men must reach the conclusion that the defendant was not negligent. Therefore the question of the defendant's negligence was not one of law for the determination of the court."

See, also, *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 417 (12 Sup. Ct. 679: 36 L. Ed. 485); *Palmer* v. *Portland Ry. Co.,* 56 Or. 262 (108 Pac. 211), decided at this time, where the same point is considered.

In *Bucklew* v. *Railway Co.,* 64 Iowa, 608 (21 N. W. 105, 106), the court, in referring to a railway employee engaged in the performance of his duty, observes that, if "absolutely required to look and listen for approaching trains or unexpected movements of the train in his charge, his usefulness would be greatly impaired. We think the question as to the duty of such employee to look and listen for the movements of trains before he steps or walks on the track must be left for the jury to determine." So in *Baltimore & O. S. Ry.* v. *Peterson,* 156 Ind. 364, 373 (59 N. E. 1047), the court observes:

"The rule which exacts of a traveler or other person about to cross a railroad track the caution to look in both directions, and also to listen in order to ascertain if a train is approaching, is not applied in all its strictness to

workmen engaged in the line of their duty at work upon a railroad track. * * Appellee's intestate is shown to have been rightfully upon appellant's track at the time of the accident, engaged as its servant at his post of duty, and he had a right to assume that appellant, in the movement of its trains, would be controlled by the requirements of the ordinance in controversy. The mere fact that he was upon the track in the discharge of his duty, and may have failed to look and listen for approaching trains, did not, under the law, constitute negligence *per se.* Such omission may or may not be negligence under the particular circumstances of a case, but of this fact the jury must be the judge."

To the same effect see *Farley* v. *Chicago, R. I. & P. R. Co.,* 56 Iowa, 337 (9 N. W. 230) ; *International & G. N. Ry. Co.* v. *Villereal,* 36 Tex. Civ. App. 532, 536 (82 S. W. 1063) ; *Jordan* v. *Railroad Co.,* 58 Minn. 8 (59 N. W. 633: 49 Am. St. Rep. 486) ; *Ominger* v. *Railroad Co.,* 4 Hun. (N. Y.) 159.

A few of the cases cited from other jurisdictions appear to sustain appellant's contention, but, being at variance with the well-settled principles upon the subject heretofore announced by this court, they must be disregarded. The case of *Morris* v. *Boston & Maine R. R.,* 184 Mass. 368 (68 N. E. 680), appears to support defendant's theory herein. In that case the plaintiff, in order to perform the duties devolving upon him, was required to work in such position and locality as to be in danger from passing trains. Another place less dangerous, within a few feet of the point where struck, was possible, as in this case and in *Rush* v. *Oregon W. P. Co.,* 51 Or. 519, 526 (95 Pac. 193), and as appears in practically all cases of this character; but the decision is not predicated upon that ground alone. In referring to the accident in the case of *Morris* v. *Boston & Maine R. R.* the court observes:

"Only a moment after he looked both ways, the engine, with the snowplow, came round the curve without sound-

ing the whistle or ringing the bell, coasting down a grade of sixty feet to the mile, with steam shut off, and he was struck by it or by the snow it threw off."

And, notwithstanding the evidence disclosed that the plaintiff had looked immediately before, and saw no train, the court held him guilty of contributory negligence, and, because he was not looking at the moment when the train suddenly came in sight, reversed the judgment entered in his favor. In other words, to have been free from such negligence and entitled to recover, the plaintiff, whose work required him to be in a stooping posture, would necessarily have been compelled to do no work at all, but to stand patiently from morning until night, watching for trains; the absurdity of which is obvious. The holding in that instance, based upon precedents formerly established in that state, as well as decisions of like import cited from one or two other jurisdictions, are not only at variance with the decided weight of authority, but so clearly inconsistent with the fundamental principles of reason and justice that they should be deemed of little, if any, weight as precedents, outside of the jurisdictions where rendered. In any event, the decisions of this court uniformly hold to a different view. In the light of all the circumstances surrounding the casualty in question, as presented by the record, we are of the opinion that ample testimony was adduced to entitle the cause to be submitted to the jury. The motions for nonsuit and to direct a verdict were properly denied.

11. It is argued that the court erred in permitting the plaintiff, during the progress of the trial, to amend his complaint by adding to the third paragraph the clause: "And negligently and carelessly failed and neglected to keep a sufficient or any lookout for persons upon the track, and especially for this plaintiff and other employees likely to be upon the track." The averments preceding it were to the effect that defendant was negligent in caus-

ing its engine to be run at an unsafe and unnecessarily high rate of speed, "and carelessly and negligently failed to give the plaintiff, or the other men employed in the vicinity, any signal or warning of the danger or the approach of the said engine." This amendment is not a new or additional cause of action. A cause of action consists of that which produces the necessity for bringing action. Words and Phrases, vol. 2, p. 1015. The primary cause for the institution of the proceeding here was the injury occasioned by the alleged negligence of defendant; and in addition to making the averments respecting negligence more definite and certain, this averment merely supplements the cause of action previously alleged with the charge of another act of negligence, without in any wise changing the original cause of action, or adding another thereto, the granting of which was within the discretion of the trial court. In this holding we are sustained by the following decisions upon the subject: *Osgood* v. *Osgood,* 35 Or. 1, 7 (56 Pac. 1017) ; *Davis* v. *Hannon,* 30 Or. 192 (46 Pac. 785) ; *Jester* v. *Lipman,* 40 Or. 408, 410 (67 Pac. 102) ; *Ridings* v. *Marion County,* 50 Or. 30 (91 Pac. 22). The foregoing considerations dispose of assigned errors 1 to 15 inclusive.

12. The sixteenth error complained of was in the refusal of the court to instruct, as requested that, "even if the fireman or engineer had seen Doyle standing in the track, they would have the right to assume that he would get out of the way in time to avoid being struck." We think the instructions given were sufficiently clear upon this and other points presented, and that no prejudice resulted in the refusal to give the instruction. The instructions given are as favorable as defendant could expect under the law, and whether any part thereof was erroneous as respects plaintiff's rights is not involved, and we express no opinion thereon.

13. The seventeenth assignment of error concerns the

refusal of the court below to set aside the judgment and grant a new trial. The first point intended by this assignment relates to certain remarks alleged to have been made by plaintiff's counsel in the oral argument before the jury. The record contains affidavits of one of the attorneys for defendant in support thereof, with countervailing affidavits by one of the opposing counsel. The issues thus presented were considered by the trial judge, who heard the argument, and who was therefore in better position than this court to determine the sufficiency thereof. We find nothing in the record which would justify us in holding that the court abused its discretion in denying the motion on that account; and the same may be said concerning the point raised by the motion in reference to the juror complained of: State v. Powers, 10 Or. 145 (45 Am. Rep. 138).

14. The next and last error assigned concerns the alleged excessive judgment, which it is insisted should be reviewed by this court. It has been settled by numerous decisions in this jurisdiction that damages assessed by a jury will not be disturbed on appeal.

15. After hearing the entire trial, carefully considering the affidavits presented in support of the motion for a new trial, and finding that in its opinion the jury was not acting from the standpoint of passion or prejudice or any undue influence of any kind, the trial court was of the opinion that the damages allowed were excessive, but denied, as it had a right to do, the motion for new trial, on condition that plaintiff remit all in excess of $35,000, which was done.

16. It is settled in this State that error cannot be predicated upon a refusal of a trial court to unconditionally set aside a verdict on account of excessive damages: Sorenson v. Oregon W. P. Co., 47 Or. 24, 33 (82 Pac. 10).

The judgment is affirmed.

AFFIRMED: REHEARING DENIED.